(627 P.2d 1179)

No. 52,193

L. K. ALLINGHAM and DOROTHY ALLINGHAM, *Plaintiffs-Appellees,* v. DALLAS L. NELSON and EVELYN NELSON, *Defendants-Appellants.*

Opinion filed May 8, 1981.

*Howard Fick,* of Fick, Myers & Pottroff, of Manhattan, for appellants.

*Donn J. Everett,* of Everett, Seaton & Knopp, of Manhattan, for appellees.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

BRAZIL, J.: Defendants appeal from a judgment which held that plaintiffs had a right-of-way across defendants' land. The court further held that plaintiffs' use of the easement for ingress and egress to plaintiffs' residence was consistent with the prior use of the roadway reserved by grant or established by prescription.

The facts are not in dispute and both parties adopted the trial court's findings of fact for their briefs. The critical facts can be summarized as follows:

There are three tracts of land involved in this case: (1) the Nelson land; (2) the Wells land—to the east of the Nelson tract; and (3) the Allingham land which is south of the Wells and Nelson tract.

Until 1945, Wells owned both the Nelson tract and his own; at that time, F. E. Wells conveyed the western 110 acres to Herbert Nelson, "Excepting and reserving unto said Grantors, their heirs or assigns, a right of way along the East side of said above described real estate and as near to the East side thereof as possible."

At the time of the 1945 conveyance, the Allingham property was owned by H. E. Nolder. F. E. Wells leased this property as pasture for his cattle. Both Wells and Nolder had traditionally used the private right-of-way across the Nelson tract to drive their cattle to Highway 24.

F. E. Wells conveyed his interest in the eastern tract to his son, Donald, in 1951. Donald continued to lease the (Nolder-Allingham) property until 1963.

The Allinghams acquired the Nolder property in 1967 and built a residence on it.

In 1960, Herbert Nelson conveyed his tract to his son and daughter-in-law, Dallas and Evelyn Nelson.

In 1967, F. E. Wells executed a document which purported to assign the right-of-way reserved in the 1945 conveyance to Donald Wells and to the Nolders.

After acquiring the property from the Nolders, the Allinghams tried to get the Nelsons to recognize the assignment of 1967; the Nelsons refused to do so.

In February, 1968, the Allinghams and the Nelsons signed a license agreement which for the sum of $100 per year allowed the Allinghams to use the right-of-way across the Nelson property. This agreement remained in effect for eight years until there was a dispute over the Allinghams' use of the right-of-way.

In 1974, Donald Wells granted a right-of-way to KP&L to service a substation on the Wells' property.

The first question to consider is whether or not the Allinghams acquired an easement over the Nelson land as a result of the reservation in the 1945 deed from F. E. Wells to Herbert Nelson.

The trial judge ruled that the reservation of the right-of-way created either an easement appurtenant or an easement in gross. As a definition of easement appurtenant, the trial judge used the following language from *Smith v. Harris,* 181 Kan. 237, 311 P.2d 325 (1957):

" 'An easement appurtenant inheres in the land, concerns the premises, and is necessary to the enjoyment thereof. It is incapable of existence separate and apart from the particular messuage or land to which it is annexed, there being nothing for it to act on. It is in the nature of a covenant running with the land, attaches to the land to which it is appurtenant, and passes to the heirs or assigns of the owner of the land, such as by a conveyance or devise of the dominant estate   .   .   .   .' " p. 247.

On the other hand an easement in gross is "a mere personal interest in or right to use land of another. It is not supported by dominant estate, but it is attached to, invested in, the person to whom it is granted." 25 Am. Jur. 2d, Easements and Licenses § 12, pp. 426-27 (1966).

"Whether an easement in a given case is appurtenant or in gross depends mainly on the nature of the right and the intention of the parties creating it. If the easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. Easements in gross are not favored by the courts, however, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate. If doubt exists as to its real nature, an easement is presumed to be appurtenant, and not in gross." § 13, p. 427.

In this case Wells conveyed a portion of his land to Nelson and retained the balance. It is obvious that the easement reserved by Wells was for his use and enjoyment in connection with the balance of his land and there are no words in the reservation which would express an intention that this easement was one totally personal to Wells apart from his land. This is a perfect example of the reservation of a right-of-way for the purpose of serving the dominant estate held by the grantor.

In fact, both parties and the trial court agreed there is little

doubt that the reservation of the right-of-way created an easement appurtenant to the Wells tract as the dominant estate. However, the trial court extended the boundary of the dominant estate to include the Nolder-Allingham tract in which F. E. Wells had a leasehold. The court concluded that the leasehold was a sufficient possessory interest to imply that it could be part of the dominant estate. See 2 Thompson on Real Property, Easements § 317, pp. 26-27 (1980 Replacement), which states:

"The only person who may grant a permanent easement is the owner of the land in fee. One who owns an estate less than the fee, such as an equitable estate or an estate for years, cannot, of course, grant a permanent easement, but only an easement to continue during the time his estate may continue. . . .

"A tenant for years, having exclusive possession, may create an easement of way during the continuance of his terms, but such easement will terminate when the tenancy terminates. . . . This rule applies to an easement or right-of-way of necessity as well as one founded on an express grant. . . . The owner of an estate for years may grant a right of passage over the land demised which will have all the qualities of an easement during the remainder of his term, but will cease upon its expiration."

In chapter 13, "Creation of Easements," Thompson states:

"A reservation of an easement is not operative in favor of land not described in the conveyance. . . .

"Technically a grantor cannot except or reserve in the deed an interest which he does not himself own at the time of the deed." pp. 138-39.

"An easement can be used only in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other property which he may then own or afterward acquire, unless so provided in the instrument by which the easement is created; and the fact that such property is within the same inclosure [sic] as the lot to which the easement is appurtenant makes no difference in the application of the rule." 28 C.J.S., Easements § 92, pp. 772-73.

The purpose of the rule is to prevent an increase of the burden on the servient estate. *Miller v. Weingart,* 317 Ill. 179, 183, 147 N.E. 804 (1925).

We have concluded that the 1945 deed created an easement appurtenant that ran only to the tract Wells retained as owner; that the Nolder-Allingham property was not part of the dominant estate.

Having concluded the 1945 deed created no easement in favor of the Allinghams or their predecessors in title, we next consider whether they have acquired an easement by prescription.

The trial court, in view of its findings that there was either an easement appurtenant or easement in gross, commented that

"resolution of the (prescriptive easement) issue is probably not necessary." However, the court briefly addressed the issue and adopted the authorities cited by the Allinghams in their suggested conclusions of law. The trial court held:

"[O]ne must conclude that a prescriptive right may be acquired in the same manner as an interest in land acquired by adverse possession. The claim of right or belief in ownership based on the reservation was present rather than a hostile claim. The requisite openness, continuity, and exclusiveness existed in the plaintiffs' predecessors to satisfy the provisions of K.S.A. 60-503 as amended."

As the trial judge points out, the elements necessary to establish a prescriptive easement are drawn from the law of adverse possession. Traditionally, the distinction between prescriptive easements and adverse possession has been described by 2 Thompson on Real Property as follows:

"Adverse possession denotes title acquired by the manner of possession, while a prescriptive easement is a nonexclusive right acquired by the manner of use." p. 191.

In Kansas, however, the distinction has been blurred somewhat, and the cases on prescriptive easements use the statute of adverse possession (K.S.A. 60-503) as a basis for evaluating claims. That statute reads:

"**60-503. Adverse possession.** No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

See *Armstrong v. Cities Service Gas Co.,* 210 Kan. 298, 502 P.2d 672 (1972); *Stark v. Stanhope,* 206 Kan. 428, 480 P.2d 72 (1971); *Renensland v. Ellenberger,* 1 Kan. App. 2d 659, 574 P.2d 217 (1977).

In examining the record, there is evidence that the right-of-way was used openly and continuously by the former owners and lessees of the Allingham tract. An affidavit of Lester Frey, predecessor in title to H. E. Nolder, stated that the use of the right-of-way to drive cattle was "continuous and unimpeded" from 1919 until 1944. Donald Wells testified that from 1944 until 1963, he used the right-of-way to drive cattle, as did Nolder, his landlord. Wells also testified that Lee Walters, a tenant who leased the land from 1963 until 1967, when the Allinghams acquired it, also used the right-of-way to drive his cattle to Highway 24. The defendant, Dallas Nelson, testified that the use of the right-of-way was

unimpeded from 1944 on; the Allingham tract and the right-of-way to it were historically used for livestock operations, according to Nelson.

The only interruption of the use seems to have been from 1968-1976, when the Allinghams used the right-of-way by virtue of a license agreement with the Nelsons, and the period thereafter when the license agreement was terminated.

As to exclusive use, there was evidence that the public sometimes used the right-of-way as an access for picnicking, but this use was discouraged by the Nelsons and the Allinghams. There was also some use by KP&L which involved going to and from a substation on the Wells property. There is no serious contention on appeal by either party, however, that the use of the property by the Allinghams and their predecessors was not exclusive.

The disputed element is that of use under "a claim knowingly adverse or under a belief of ownership." K.S.A. 60-503. The trial court found the right-of-way was used "under a belief of ownership."

This element represents a change in the statute on adverse possession. The prior statute, G.S. 1949, 60-304 *Fourth,* represented the traditional adverse possession which required a showing of hostile or adverse use. The change expected by the amendment of the statute in 1963 is extensively discussed in *Stark v. Stanhope,* 206 Kan. at 432-33. Pertinent parts of that discussion are included below:

"The section became effective January 1, 1964, and amended G.S. 1949 60-304, *Fourth.* Formerly, the elements of the possession were required to be 'notorious' and 'hostile,' but the new section eliminated the element of hostility as essential of adverse possession and changed the common-law conception of the doctrine. It is still necessary, however, to succeed on a claim of title by adverse possession, that the possession shall have been 'open, exclusive and continuous' for the statutory period. In lieu of an adverse or hostile holding, the claim may be based on, as the appellant testified, 'a belief of ownership.' In his commentary on Kansas Code of Civil Procedure, Judge Gard states the belief of owner concept may present some difficulties as it makes the belief of the possessory claimant, a relevant matter; that belief is a state of mind, whereas hostile holding involves an intent, and belief is distinct from intent; that they are not synonymous, and unless the claimant has made statements to someone evidencing a contrary mental attitude, it is difficult to challenge effectively the testimony of a person as to his belief. (Gard, Kansas Code of Civil Procedure, Annotated, § 60-503, p. 522.)

"In a Vernon's Kansas Statutes Annotated, Code of Civil Procedure (Fowks, Harvey, Thomas) it is stated that Professor Melvin C. Poland wrote the authors' comments concerning Section 60-503, pp. 6 and 7. In his commentary, Professor

Poland refers to the Advisory Committee's notes where it stated that this section 'changes the common law principles of adverse possession as pronounced by the Kansas Supreme Court.' He further states:

" 'In the language of the statute "belief of ownership" has been substituted for the common law element of "hostile" holding. It may be assumed the change will make it more difficult to challenge the character of the holding, belief being a state of mind whereas hostile holding involves an intent, normally evidenced by overt acts or statements in respect to such holding. While it may be argued that legislation should not be designated to make acquisition, by a possible criminal act, of ownership of property easier to obtain, it must be admitted that the two-fold policy behind statutes of limitation (the curtailment of stale claims, and the rewarding of the individual who has made beneficial and productive use of the land over a long period of time) will be accomplished more often under the new concept of "belief of ownership" established by the statute.

" 'Belief of ownership as a substitute for "hostile" holding is not without limitation. In cases where there has been an admission or recognition of doubt or uncertainty as to the true boundary line the requisite "belief of ownership" does not exist under the statute. *Further, it must be recognized that in cases where possession has been "under a claim knowingly adverse" hostility remains an essential element.* . . .' (p. 7) (Emphasis supplied.)"

In this case, as in the *Stark* case and the *Armstrong* case, the difficulty is in evaluating the "belief of ownership." Here, the owners or tenants of the Allingham tract who testified stated that the *historic usage* of the right-of-way was for driving cattle; there is no testimony that any of them *believed* that they had a right to the easement. It is very difficult to distinguish between a *permissive use,* which does not become an easement, no matter how long it continues, and a *"belief of ownership"* which would support a prescriptive use. The cases cited since the 1963 amendment do not give much assistance in making the distinction.

A review of the record reveals evidence relevant to this element: the Frey affidavit which describes the use of the right-of-way until 1944; Donald Wells' testimony on the historic use of the Nolder-Allingham property and the right-of-way; Dallas Nelson's testimony that he had never told Mr. Nolder whether he could or could not use the right-of-way; Nelson's statement that he only recognized the *historic use* of the right-of-way for moving livestock.

Testimony that may cut against the interpretation of "belief of ownership" is Nelson's testimony that Nolder did some work on the Nelson property in exchange for the use of the right-of-way. This testimony lends itself to the *permissive use* or license interpretation. The licensing agreement with the Allinghams also indicates the use may have been merely permissive.

The defendants point out the burden of establishing the elements of prescription is on the plaintiffs, the Allinghams, and the elements must be established by "clear, convincing and satisfactory evidence." *Fiest v. Steere,* 175 Kan. 1, 6, 259 P.2d 140 (1953).

Finally, we consider the question of whether the present use of the right-of-way by the Allinghams is consistent with the use established by prescription. This issue, as with the issue of prescriptive easement is hampered by rather scanty findings of fact by the trial court. The trial judge held that:

"[T]he plaintiffs' use, if acquired by prescription, would be a use consistent with and similar in kind to the use made by the plaintiffs' predecessors in title which was access to and from the tract. As noted, that use is being made by the plaintiffs, although probably with greater frequency than the Freys, Nolder, Wells, and Walters."

There is almost no real evidence on this issue in the record, other than the comment that the Allinghams have now built a home on the tract and use the right-of-way to get to and from their home. Mr. Fick, counsel for the defendants, argues that the expanded use is unreasonable, but there is little, if any, testimony on the expanded use.

The trial judge's reluctance to rule on this point was based on his belief that making further findings on this issue was unnecessary in view of his findings that the easement was by reservation, not prescription. We thus find it necessary to reverse and remand this case for further findings of fact. The trial court should afford the parties an opportunity to present evidence pursuant to K.S.A. 60-252 on the issue of the existence of a prescriptive easement and if that easement is determined to exist to determine if the Allinghams have expanded the use of that easement.

Reversed and remanded with directions.