(972 P.2d 787)

No. 78,226

BRADY FLUID SERVICE, INC., a Kansas Corporation, and DCI, INC., a Kansas Corporation, *Appellants*, v. C. LEON JORDAN, a/k/a LEON JORDAN, DEBRA L. JORDAN, a/k/a DEBBIE JORDAN, and WILLIAM H. KUEHN, *Appellees*.

Opinion filed December 31, 1998.

*Michael E. Collins*, of Hope, Mills, Bolin, Collins, Ramsey & Heydman, of Garden City, for the appellants.

*E. Edward Brown*, of Calihan, Brown, Burgardt, Wurst & Daniel, of Garden City, for appellee William H. Kuehn.

*Bradley W. Maudlin*, of Ward Loyd Law Offices, L.L.C., of Garden City, for appellees C. Leon Jordan and Debra L. Jordan.

Before LEWIS, P.J., KNUDSON, J., and STEPHEN R. TATUM, District Judge, assigned.

LEWIS, J.: The plaintiff in this action is Brady Fluid Service, Inc., which we will refer to as Brady. The defendants are C. Leon Jordan and Debra L. Jordan, whom we shall refer to as the Jordans, and William H. Kuehn, whom we shall refer to as Kuehn. Brady owns and occupies tract No. 523, which lies east of the land owned by the Jordans and Kuehn and which is adjacent to those tracts. Kuehn owns the east 100 feet of tract No. 523-9J, which is adjacent to the west line of tract No. 523. The Jordans own tracts Nos. 523-9F, 523-9G, and 523-9H. Of these three tracts, tract No. 523-9H lies along the west side of tract No. 523.

Brady purchased tract No. 523 in 1990, and for several years since that time, had ingress and egress to its place of business over Crane Road. Crane Road is a 40-foot-wide private drive, which is located west of tract No. 523 and constitutes the north line of Kuehn's tract and the south line of the Jordans' tracts.

The area described above is unplatted and, as near as we can tell, Crane Road is not and never has been a dedicated public road.

At some point in time, a dispute arose between the Jordans and Kuehn on the one hand and Brady on the other. The relationship deteriorated to the point that the Jordans and Kuehn erected a barrier at the east end of Crane Road. Crane Road terminates as it reaches the west line of Brady's tract, and the barrier at the east end of Crane Road effectively stops Brady from traveling on that road to its place of business.

Although it is clear that Brady has other and adequate means of accessing its place of business, it instituted the current litigation as a direct result of the barrier being placed to block its access to Crane Road. The action filed was one to enjoin the Jordans and Kuehn from placing the barrier or continuing to leave the barrier at the east end of Crane Road.

Brady first sought a preliminary injunction and restraining order to require the Jordans and Kuehn to remove the barrier and refrain from interfering with Brady's use of Crane Road. The trial judge hearing the application for a temporary injunction and restraining order granted that relief.

In due time, the matter came on for trial on the question of a permanent injunction and restraining order. At this point, a new trial judge had been assigned to the case. This trial judge heard the evidence and dissolved the temporary injunction and restraining order, denied a permanent injunction, and awarded the defendants nominal damages and substantial attorney fees.

Brady appeals. In doing so, it has posted a supersedeas bond which allows it to continue to use Crane Road pending a decision by this court.

## EASEMENT BY RESERVATION

Brady first argues it has an easement by reservation to travel upon Crane Road. The facts in this case were stipulated to by the parties and, accordingly, we have unlimited review of the decision of the trial court. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987).

Brady's claim to an easement by reservation over Crane Road is based on a series of deeds to property it has never owned, to which it was not a party, and in which tract No. 523 is not described.

In 1972, Charles I. Hager and Lucile A. Hager deeded a tract to Barber Ready-Built, Inc. (Barber). This deed contained the following reservation: "Grantors retain and reserve, however, a permanent easement across the North 40 feet of the above tract, for the use and benefit of the public, for access to and from the properties adjoining the above property on the North and East."

The easement was used to create Oller Road, which is north of Crane Road and which crosses the north side of Brady's tract. Brady currently has access to its tract over Oller Road, and that access and the right to travel on that road are not an issue in this case.

In 1975, Barber deeded a portion of the tract (523-9J) it purchased from the Hagers to Mid-West Crane Rental, Inc. (Mid-West Crane). That deed contained the following notation: "The north 40 feet of said tract is reserved for a private road easement to adjacent properties." It is this 1975 deed and reservation which Brady argues creates an easement in its favor.

In 1984, Mid-West Crane deeded the east 100 feet of its tract to Kuehn. The deed to Kuehn also stated: "The North forty feet (N. 40') of said tract is reserved for a private road easement to adjacent properties."

In 1976, Barber deeded tract No. 523-9H to defendant Leon Jordan. The deed to Jordan contained no language concerning the reservation of a road or easement.

Brady's title to tract No. 523 originates with the Hagers. In 1974, 2 years after their deed to Barber, the Hagers deeded the tract Brady now owns to Song B.S. Myers. The deed from the Hagers to Myers contains no reference to a reservation of a private road or easement.

In 1990, Myers deeded tract No. 523 acquired from the Hagers to Brady. Although that deed contains the reservation of an easement, it does not appear to be in question in this lawsuit, and therefore we do not set it out.

The stipulated facts make it clear that Brady did not own tract No. 523 at the time the easement was reserved by Barber. In addition, at no time did Brady own any of the real estate on which the easement was impressed. Brady argues simply that its tract is adjacent to the property on which the easement was created and, for that reason, it is entitled to the easement.

The general rule is that a reservation in a deed cannot create an easement in favor of a third party unless that was clearly the grantor's intent. See 25 Am. Jur. 2d, Easements and Licenses § 20. The easement in this case was created in a deed from Barber to Mid-West Crane, and Brady is a stranger and a third party to that deed.

We believe that the facts of this case are close to those found in *Allingham v. Nelson*, 6 Kan. App. 2d 294, 627 P.2d 1179 (1981). Allingham's predecessors in title owned land to the south of the property formerly owned by one party. That party sold part of the land to defendant Nelson but reserved in the deed an easement across the property. Plaintiff, although not a party to that deed, claimed it gave him an easement across defendant's property. We held it did not because a reservation of an easement *does not apply to land not described in the conveyance and because a grantor cannot reserve an easement to apply to property which the grantor*

*does not own at the time he or she reserves the easement.* "The purpose of the rule is to prevent an increase of the burden on the servient estate." 6 Kan. App. 2d at 297.

In this case, Brady seeks to take advantage of an easement created by a deed to which it was not a party and in which its land was not described. In addition, the grantor in the deed containing the easement did not then and never had owned the tract currently owned by Brady. Under these facts, no easement can arise in favor of Brady based on our decision in *Allingham.*

Plaintiff argues that its tract was "adjacent property" within the meaning of the reservation in the deed from Barber to Mid-West Crane: " 'The North 40 feet of said tract is reserved for a private road easement to *adjacent properties.*' " (Emphasis added.) The trial court rejected this argument and said:

"When [the Hagers] deeded the land to Barber Ready Built Homes an easement was reserved across the extreme northern tract of the Barber land by Hager [now known as Oller Road]. That reservation reads as follows: 'Grantors retain and reserve, however, a permanent easement across the north 40 feet of the above tract, for the use and benefit of the public, for access to and from the properties adjoining the above property on the north and east.'

"In 1974 Mr. Hager still owned Plaintiffs' property. In making that reservation, he assured himself of permanent access to what is now Plaintiffs' property. There is no question but that the Plaintiffs' property is a dominant estate and that the northern 40 feet of Barber's property was the servient estate.

"In 1975 Barber Ready Built Homes sold a tract which ultimately became Kuehn's land to Mid-West Crane Rental, Inc., and reserved the north 40 feet of that tract for a private road easement. With that deed was recorded a plat of the tracts that Barber had developed in the land he purchased from Hager. It is obvious in that plat that the Jordan land and the Kuehn land would be landlocked and separated from the public road easement created by Hager or any other access unless the 40-foot private road easement was reserved. At the time this deed was filed, along with the plat, Hager had sold what is now the Plaintiffs' property to Myers. The stipulated facts do not indicate that there had been any subdivision or dividing up of Myers' land at the time the easement in question was first created. The Plaintiffs' land appears to still be in one large tract which was served by the permanent public easement created by Hager across Barber's land.

"It is readily apparent from examining the deeds of record and the language in those deeds that the easement in question was not created to benefit Plaintiffs' land for two reasons. First, Plaintiffs' land was being served by the public road easement created across Barber's land for its benefit. Second, had Barber intended to create an easement to serve Plaintiffs' land and make it a dominant

estate, he would have used the same or similar language that had been used in the deed by which he acquired title. An examination of the language in the deeds in the chain of title to both Defendants' and Plaintiffs' property clearly show that there was no intent to benefit Plaintiffs' property by the reservation of the 40 foot private road easement across Kuehn's land."

We agree with the reasoning of the trial court.

Brady urges us to adopt the reasoning set forth in *Aszmus v. Nelson*, 743 P.2d 377 (Alaska 1987). In that case, the Alaska court held that reservations can be created for third parties when that is the grantor's intent. 743 P.2d at 379-80. Even if we were to use the philosophy of the Alaska court here, it would be of no benefit to Brady. In this case, the intent of the grantor, who created the easement which Brady contends it is entitled to use, is shown by an affidavit where it states it intended only to create a reservation in favor of the adjacent properties it owned and not to create a reservation in favor of tract No. 523.

For all of the factors mentioned, plaintiff cannot be said to have obtained an easement by reservation from the deed executed and delivered in 1975. The trial court did not err in holding that Brady does not have an easement by reservation.

## EASEMENT BY PRESCRIPTION

Brady next argues that at the very least, it had an easement by prescription over Crane Road. The trial court held otherwise and said:

"As pointed out in *Allingham*, Kansas cases have relied on the adverse possession statute to evaluate prescriptive easement claims. The stipulated facts indicate that the Plaintiffs and their predecessors in title and, indeed, the general public have used the private road easement in question for years. The problem comes in establishing a belief of ownership. There is no evidence in the file to indicate that the two corporations who are Plaintiffs had a corporate 'belief of ownership.'

"Furthermore, the elements to establish a prescriptive easements [*sic*] must be established by clear, convincing, and satisfactory evidence (*Fiest v. Steere*, 175 Kan. 1). It is apparent from the facts that the use which Plaintiffs, their customers, service vehicles, and the general public made of the private road easement was a permissive use which, according to *Allingham* does not become an easement no matter how long it continues."

The trial court's ruling as set forth above is supported by stipulated facts, and we believe it is correct. In *Allingham*, it was indicated that Kansas courts use the K.S.A. 60-503 elements for adverse possession in evaluating whether a prescriptive easement exists. 6 Kan. App. 2d at 298. The statute in question provides: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

In this case, we look to the stipulated facts and conclude they simply do not establish by clear and convincing evidence that Brady and its predecessors had a belief in ownership in Crane Road for a period of 15 years. The use of Crane Road over the years appears to be permissive or in the nature of a license, which can never ripen into an easement. See *Taylor Investment Co. v. Kansas City Power & Light Co.*, 182 Kan. 511, 519, 322 P.2d 817 (1958). We also note from the stipulated facts that Brady's use of Crane Road was anything but exclusive. The stipulated facts indicate that Crane Road is used by employees and customers of businesses located along it, including Vern Cox Frame & Axle; Fields & Sons, Inc.; and Mid-West Crane.

We affirm the trial court's holding that no easement by prescription existed in this case.

## LACHES AND EQUITABLE ESTOPPEL

Brady argues it attempted to raise the issue of laches and estoppel at the trial court level and that the trial court failed to rule on those affirmative defenses. Defendants suggest these issues are not before the court because Brady failed to identify them as an issue in the notice of appeal, which states that the appeal is from

"that part of the Court's judgment . . . which decrees that whatever right, title and interest the Defendants and each of them have in the 40-foot easement known as Crane Road be quieted in them as against the Plaintiffs, and also appeal from that part of the Court's judgment which dissolves the temporary injunction previously granted herein, and also appeal from that part of the Court's judgment which awards to the Defendants attorney's fees as against the Plaintiffs, jointly and severally, to the Court of Appeals of the State of Kansas."

This court has jurisdiction only over rulings identified in the notice of appeal. See *State v. Grant*, 19 Kan. App. 2d 686, Syl. ¶ 1, 875 P.2d 986, *rev. denied* 255 Kan. 1005 (1994). Our examination of the notice of appeal in this case indicates that the trial court's decision or lack thereof on the affirmative defenses of laches and estoppel was not appealed from.

Defendants also point out that Brady never raised laches or estoppel. These defenses are set forth as affirmative defenses in Brady's reply to Kuehn's counterclaim. However, at the hearing on the motion for final determination of all outstanding issues, Brady did not mention the counterclaims based on laches and estoppel and did not request the trial court to rule on them. This appears to us to be in the nature of invited error. See *In re Estate of Kinnett*, 23 Kan. App. 2d 842, 844-45, 935 P.2d 1090 (1997).

We conclude that Brady's arguments concerning the issues of laches and estoppel are without merit.

## DAMAGES AND ATTORNEY FEES

At the conclusion of the hearing, the trial court awarded the Jordans $1 in damages and $7,580.26 in attorney fees and awarded Kuehn $1 in damages and $6,412.53 in attorney fees. Brady appeals that award.

Brady appears to argue that K.S.A. 60-905(b) only allows the award of damages and attorney fees where a bond is ordered to secure the potential damage and attorney fees. In this case, the trial court waived the bond and no bond was filed prior to the issuance of the preliminary injunction and restraining order.

Prior to 1988, a surety bond was a requirement before a temporary injunction could be issued under K.S.A. 60-905(b). That statute was amended in 1988 to provide that no state agency could be required to give a bond and *that the bond requirement can be waived for any other party at the discretion of the trial court*. L. 1988, ch. 214, § 1. The trial court held as follows:

"Whereas, the temporary injunction statute prior to 1988 had made the procurement of a surety bond a condition precedent to an effective temporary injunction, the statute, in its current state, makes the procurement of a surety bond merely a procedural tool for use by the trial judge. The substantive right to recover

damages and attorney fees has always been a part of the statute, and, probably, within the inherent equitable powers of the Court. The current statute simply makes it optional as to whether or not the trial judge wants to secure the payment of the same with a surety bond."

To adopt Brady's interpretation would impose nonsensical results. For instance, under the argument that if the bond was waived or if the State was asking for an injunction, the party enjoined would never have an opportunity to collect damages or attorney fees. We conclude that is not what the 1988 amendment was designed for. That amendment changes only that the "undertaking of a surety" is not always required, not that damages and attorney fees may not be recovered when the undertaking of a surety is not possible or is waived.

We hold that under K.S.A. 60-905(b) a party may recover damages and attorney fees even though bond may have been waived in that case and no bond has been posted. We affirm the trial court's award of damages and attorney fees.

Affirmed.