(294 P.3d 338)
No. 107,585

JOSEPH R. KOCH, Trustee of the JOSEPH R. KOCH REVOCABLE TRUST dated March 12, 1993, *Appellee*, v. E. LYNN PACKARD and JAYNE E. PACKARD, Cotrustees of the E. LYNN PACKARD REVOCABLE TRUST dated July 10, 2003, and JAYNE E. PACKARD and E. LYNN PACKARD, Cotrustees of the JAYNE E. PACKARD REVOCABLE TRUST dated July 10, 2003, *Appellants*.

Opinion filed November 2, 2012.

*Alan C. Goering*, of Goering and Slinkard, of Medicine Lodge, for appellants.

*Gordon B. Stull*, of Stull Law Office, P.A., of Pratt, for appellee.

Before McANANY, P.J., MALONE and HILL, JJ.

HILL, J.: In this appeal, we overturn the district court's ruling that Joseph R. Koch acquired a prescriptive easement in a roadway on land owned by E. Lynn and Jayne E. Packard in Barber County. Kansas caselaw requires exclusivity as an element for prescriptive uses. The facts in this record reveal that Koch has not had the exclusive use of this roadway over the years and, therefore, the court erred when it ruled that he had a prescriptive easement.

*Installation of a gate leads to legal action.*

This lawsuit involves adjacent landowners located in Barber County, Kansas. Joseph R. Koch (as trustee of the Joseph R. Koch Revocable Trust) owns one tract. Koch purchased this ground in 1993. E. Lynn Packard and Jayne E. Packard also own real property adjacent to Koch's. The Packards purchased part of their land in 2000 and the remainder in 2005.

In January 2011, Koch filed a petition for declaratory judgment in Barber County District Court claiming he had a prescriptive easement across the Packard land. Koch claimed that a roadway across the Packards' land gave him access to his land—and that the Packards had interfered with this access by installing a gate that prevented Koch from getting to his property. Koch asked the court for an order determining he had a prescriptive easement across the Packards' land, an award for damages sustained when the Packards interfered with his easement, and a permanent injunction enjoining the Packards from interfering with the easement. We note that Koch is not asking for an easement by necessity. When Koch acquired his property, he was required to prove he had access in order to qualify for title insurance. Consequently, Koch obtained a warranty deed that included a "perpetual road easement" for the purpose of ingress and egress to his property.

*We summarize the findings of the district court.*

After weighing the testimony of the witnesses, the court found that when Koch purchased the tract, he was advised by counsel to obtain affidavits from a prior landowner, Phillip R. Stonestreet, and a farm tenant, George E. Catlin, Sr., confirming the belief that

Koch had acquired unrestricted access to the Koch land via the roadway. The court found that when Koch bought the land, he was told the roadway was his access to the property and there was no other roadway to the land. He was also told the access was unrestricted and the roadway had been used to access the tract for more than 20 years. The court determined Koch never requested permission, nor was he ever given permission, to use the roadway because he believed he acquired use of the roadway upon his purchase of the farm.

When the court looked at the actual usage of the roadway, it found Koch had been using the roadway for farming, recreational, and hunting purposes, and to generally care for his land since 1993 (a period greater than 18 years)—and this usage had been unrestricted. The court also found that Koch and his invitees frequently used the roadway and that Koch had even attempted to perform maintenance on the roadway at one point. The court noted Koch's testimony that the roadway had also been used by the landowners that own property south of the Packards' land, and he and others are currently using the roadway and have been for many years. The court observed that Koch admitted he was not claiming "exclusive use" of the roadway.

Turning to the Packards' evidence, the court determined the Packards were aware that persons, including Koch, had used the roadway for access for many years prior to the Packards' purchase of their land. The court found the Packards never questioned Koch's use of the roadway nor tried to stop his use of the roadway until there was a dispute in 2010 regarding deer hunting. The court said that although Mr. Packard initially claimed he gave Koch permission to use the roadway, he later testified the Packards never gave Koch permission to use the roadway and Koch never asked for permission. The court found the Packards were also aware that third parties used the roadway to access property south of the Packards' land. The court noted testimony that the roadway was used by Catlin, Bob Larson, Robert Larson, Pat Bidwell, friends of Koch, people who checked on CRP planting, and people who came on the land to spray alfalfa.

In addition, the court found that in 2010 the Packards began allowing cattle to roam freely on the roadway. The court also determined the gate did not block anyone's ability to drive down the roadway.

The district court ultimately determined that Koch had acquired a prescriptive easement across the Packards' land. In addition, the court found the Packards had committed trespass by installing a gate across the easement and by allowing cattle to graze there. The court awarded Koch damages, ordered the Packards to remove the gate, and enjoined them from interfering with Koch's use of the roadway.

In reaching its decision, the district court concluded there was "more than sufficient evidence to establish clearly and convincingly" that Koch had been using the roadway for more than 15 years and the Packards did not give Koch permission to do so. The court also concluded Koch had good reason to believe he had an ownership interest in the roadway and Koch's use of the roadway was exclusive. With regard to the latter, the court said the caselaw "clearly indicates" that exclusivity differs for purposes of a fee interest from exclusivity for purposes of an easement. The court stated: "When considering a claim for prescriptive easement, the type, nature of use and surrounding circumstances must be considered. Here, [Koch] has shown exclusive use for access to his property, the fact that others have also used the roadway does not negate his claim."

The Packards appeal the decision of the district court, arguing that Koch cannot have a prescriptive easement in the roadway because he did not prove he had "exclusive use" of the roadway.

*We review the rules that apply in prescriptive easement cases.*

We look to the law of adverse possession when determining the legal rules that apply in prescriptive easement cases. A firm ruling on this point can be found in *Feist v. Steere,* 175 Kan. 1, 5, 259 P.2d 140 (1953), where the court stated:

" 'To obtain an easement for a private way by prescription, the use of such private way must be substantially such a use as, if applied to land, would give title by adverse occupancy. It must have been continuous, exclusive to the extent the

nature of the use will permit, and adverse. A use under a mere license will not ripen into an easement by prescription.' [Citation omitted.]"

In *Feist*, the court held that the party claiming the easement, Feist, had proved that for 35 or 40 years he had used a small, unfenced triangular tract of Steere's land as a means of ingress and egress to his hay meadow. Further, Steere and his predecessors in title knew of the use and had made no objection to its use. Our Supreme Court opined: "[T]he most that can be said for such evidence is that it established a license to use the premises which . . . can never ripen into an easement by prescription." 175 Kan. at 6; see *Allingham v. Nelson*, 6 Kan. App. 2d 294, 298, 627 P.2d 1179 (1981).

When a party seeks title by adverse possession, the presumption is in favor of the holder of the legal title. The law does not allow a person's property to be taken by another upon presumptions or probabilities. *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). Thus, to prove a prescriptive easement, the person seeking the right to the easement has the burden of establishing all the elements of prescriptive use by clear, convincing, and satisfactory evidence. *Fiest*, 175 Kan. at 6.

The question whether title is acquired by adverse possession is a question of fact. *Wright v. Sourk*, 45 Kan. App. 2d 860, 871, 258 P.3d 981, *rev. denied* 293 Kan. 1114 (2012). When reviewing the lower court's determination on this question, this court looks to whether that determination is based on clear and convincing evidence. See *Brady Fluid Service, Inc. v. Jordan*, 25 Kan. App. 2d 788, 793-94, 972 P.2d 787 (1998). This court views the evidence in a light most favorable to the prevailing party and does not reweigh the evidence or assess credibility. *Wright*, 45 Kan. App. 2d at 871.

The statute dealing with adverse possession, K.S.A. 60-503, provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

The Kansas cases dealing with adverse possession make clear that "exclusive use" is a necessary requirement to prove title by adverse possession.

In *Stith*, the court held the Williams did not prove ownership of land by adverse possession where the evidence did not show the Williams' use of the land was "exclusive" or "continuous." In reaching this conclusion, the court noted the Williams "occasionally" used a cellar and shed located on the land and some neighbors used the land as a trash dump. 227 Kan. at 37.

Similarly, in *Thompson v. Hilltop Lodge, Inc.*, 34 Kan. App. 2d 908, 910-11, 126 P.3d 441 (2006), a panel of this court affirmed a district court's determination that the claimants did not have "exclusive possession" of land allegedly taken by adverse possession, noting several of the landowner's employees had performed maintenance on the land.

Then, in *Allingham* this court commented on the exclusivity requirement, but in the context of a prescriptive easement. There, the court referred to the requirement and noted there was evidence in that case that both the public and KP&L used the land at issue. Nevertheless, the court observed there was "no serious contention on appeal by either party" in that case that the use of the land was not exclusive. 6 Kan. App. 2d at 299.

Koch points out that the *Allingham* court said there is a distinction between prescriptive easements and adverse possession, noting a prescriptive easement is a "non-exclusive" right acquired by the manner of use. Koch misconstrues *Allingham* on this point. While the *Allingham* court indeed acknowledged that some legal literature has described a prescriptive easement as a nonexclusive right, the court explained that the distinction in Kansas between adverse possession and the prescriptive easement has been somewhat "blurred." Thus, the court explained, Kansas cases use the statute of adverse possession as a basis for evaluating prescriptive easement claims. 6 Kan. App. 2d at 298. The *Allingham* court cited K.S.A. 60-503, which specifically lists exclusive use as a requirement for proving adverse possession, and later referred to the exclusive use requirement in its analysis. 6 Kan. App. 2d at 298-99.

*We apply those rules to the facts of this case.*

In this appeal, the Packards argue Koch failed to meet his burden of proving an essential element of prescriptive use. Viewing

the evidence in the light most favorable to Koch, see *Wright*, 45 Kan. App. 2d at 871, we examine the record to determine whether clear and convincing evidence supports the district court's determination that Koch proved the prescriptive use of the roadway.

A fair review of the evidence makes it clear that Koch did not have exclusive use of the roadway.

First, the district court found, based on Koch's own testimony, that the roadway was used by the landowners south of the Packards' land and Koch and others had been using the roadway for years. The court found the Packards were aware that persons including Koch had used the roadway for many years and third parties used the roadway to access the property south of the Packards' land. The testimony of both Koch and the Packards reveals that persons other than Koch were using the roadway.

Second, the district court observed that when Koch purchased his land, he was advised by counsel to obtain affidavits from Stonestreet and Catlin confirming that he had unrestricted access to the Koch land via the roadway. In Stonestreet's affidavit, he indicated the roadway was "available for unrestricted access . . . by the owners, tenants and other persons." Catlin made a similar statement in his affidavit. Stonestreet's and Catlin's statements suggest persons other than Koch used the roadway even before Koch's ownership of his property.

Third, Koch admitted—and the court explicitly found—he was not claiming exclusive use of the roadway. Koch testified as follows:

"Q. So you're not claiming exclusive use?
"A. That's right.
"Q. Okay. Just that you ought to have the right to use it because you said it was used by other people?
"A. Right. Plus, my period of time using it."

Significantly, Koch's own testimony indicates he believed he had the right to use the roadway because it was being used by other people as well. This undercuts his argument that exclusivity only requires the claimant not depend on the rights of others.

Fourth, the district court found the Packards' gate did not block any persons' ability to drive down the roadway and noted testimony that the roadway was used by Catlin, Bob Larson, Robert Larson,

Pat Bidwell, friends of Koch, government workers who checked on CRP ground, and people who came on the land to spray alfalfa. Koch does not challenge any of these factual findings on appeal.

*We look at the arguments of the parties on the issue of exclusivity.*

Koch's central argument on this point is that the exclusivity requirement does not mean the land at issue must be used solely by the person claiming the prescriptive easement. Koch says that here, a third party had access to the roadway—but this third party was an adjoining landowner who also used the easement for the same reason Koch did, and his rights did not conflict with the third party's rights. Koch points to cases in other jurisdictions where courts have determined the exclusivity requirement does not mean the land can only be used by the person claiming the easement, but only that the claimant may not depend on the rights of others to support his claim. Koch says the claimant's use must be exclusive against the public at large, but it need not be exclusive against others with similar claims of prescriptive use.

We note a few examples of rulings from other states. In *Wheeler v. Newman*, 394 N.W.2d 620, 623 (Minn. App. 1986), the court held the exclusivity requirement was met where sporadic public use of the land did not defeat a finding that the claimant's use of the land did not depend on a right shared by the community at large. In *Werner v. Schardt*, 222 Neb. 186, 188-89, 382 N.W.2d 357 (1986), the court stated the word "exclusive," as it pertains to a prescriptive easement, does not mean there must be use by only one person, but it means the use cannot be dependent upon a similar right in others. These decisions seem reasonable in light of the fact that a party is not claiming title to real estate but is claiming access. But we are in no position to follow their reasoning.

No Kansas court has ever analyzed the element of exclusivity in a similar manner. When Kansas courts have considered the requirement of exclusivity in the adverse possession context, those courts have determined the claimant's use of the property at issue must be to the exclusion of *all other persons*. See *Stith*, 227 Kan. at 37; *Thompson*, 34 Kan. App. 2d at 910-11. The *Allingham* court confirmed that because the distinction between adverse possession

and prescriptive easements has been "blurred" in Kansas, courts use the statute of adverse possession as a basis for evaluating prescriptive easement claims. 6 Kan. App. 2d at 298.

We recognize that a certain inequity arises under the facts of this case. Koch purchased the property thinking he had easy access to his land from this roadway and then, along with others, proceeded to use the roadway for the next 18 years. Because of a hunting dispute, his access was shut off. While it is true that Koch has access to his property through an easement he purchased separately, its use will require an investment of time, labor, and money to make it usable. But according to our caselaw that we are duty bound to follow, all of the elements of adverse possession must be proved in order for Koch to prevail. See *Tyler v. Goodyear Tire & Rubber Co.,* 43 Kan. App. 2d 386, 391, 224 P.3d 1197 (2010). One of those elements is exclusivity. He cannot prove that under the circumstances of this case. Like Feist, who had used the roadway for 35 to 40 years, all Koch had was a license which cannot change into a prescriptive easement.

We reverse the ruling of the district court that Koch has a prescriptive easement. We vacate the judgment for damages and dissolve the injunction.