NOT DESIGNATED FOR PUBLICATION

No. 123,823

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENNIS D. PYLE and JENNIFER J. PYLE,
*Appellees*,

v.

JAMES N. GALL JR., Individually and as Trustee
of the JAMES N. GALL FAMILY TRUST,
*Appellants*.

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed April 29, 2022.
Affirmed in part, reversed in part, and remanded with directions.

*Charles D. Baskins*, of Euler Law Offices, LLC, of Troy, for appellants.

*James S. Willard*, of Willard Law Office, LLC, of Topeka, for appellees.

Before MALONE, P.J., ATCHESON and WARNER, JJ.

PER CURIAM: This case concerns a property dispute between Dennis and Jennifer
Pyle and their neighbor, the James N. Gall Family Trust. After bench trial, the district
court found the Pyles had adversely possessed a portion of, and acquired a prescriptive
easement across, the Galls' property. On appeal, James Gall Jr., acting both individually
and on behalf of the Trust, challenges these conclusions.

After reviewing the evidence and the parties' arguments, we find that the record
supports the district court's finding that the Pyles adversely possessed a portion of the
Galls' previous property. But the district court erred when it found the Pyles had

1

established a prescriptive easement across the Galls' field to access that farmland. We thus remand the case so the district court may consider the Pyles' alternate claim that an implied easement by necessity exists to allow them to access the land.

FACTUAL AND PROCEDURAL BACKGROUND

The Pyles own the northeast quarter of a section of land in Brown County. The western edge borders land owned by the James N. Gall Family Trust. A creek cuts across the northwest corner of the Pyle property, isolating a small portion of farmland—less than 2 acres—on the western side of the creek. No bridge or road provides access to this field, so entrants must either cross the Galls' property from the west or a neighbor's property from the north.

The Pyles purchased their land in 1994 and began farming this northwest field on the other side of the creek in 1995. To access the field, the Pyles crossed the northern boundary of the Galls' property. This involves driving down an old road, over railroad tracks, and then across the Galls' field.

Several circumstances surrounding these acts created friction between the neighbors. On occasion, people driving across the field would damage the Galls' crops. James Gall Jr.'s father, James Gall Sr., once told his son that he told the Pyles to stop crossing Gall land. Gall Sr. would also sometimes complain to, and once sought restitution from, the Pyles when they knocked over Gall crops. And no fence marked the property line, raising concerns over how far west the Pyles planted.

According to Dennis Pyle, the disagreement came to a head in 2014, when the Galls' tenants—Lee and Jim Mueller—planted farther east than usual. In 2015, Pyle reestablished the traditional crop line, which he believed marked the property line. Believing Pyle was encroaching on their land, the Galls offered to buy the field in a letter

2

and discussed other issues, such as the Pyles accessing the property through the Galls' field. When Pyle did not respond, they renewed their offer but prohibited him from crossing their land after that year's harvest.

The Pyles and the Galls each hired surveyors in an effort to determine the correct property line. But the surveyors reached different conclusions. The Galls' surveyor concluded the northern boundary aligned with a fence post that the Galls traditionally believed marked the border. The Pyles' surveyor believed the boundary was 17 feet west of the Galls' surveyor's line and within 3 feet of the 2015 crop line. In March 2016, the Galls built a fence across the field based on their surveyor's boundary.

In March 2017, the Pyles filed a petition seeking to quiet the title to the northwest field up to the 2015 crop line by adverse possession and seeking a prescriptive easement or easement by necessity across the northern boundary of the Galls' land. The parties presented evidence on these claims at a trial to the court in October and December 2019.

Pyle explained that for more than 15 years, he used the Galls' northern boundary to access his field to plant and check his crops and look for unauthorized hunters. He never asked permission to do so and instructed other farmers he hired to use that route. And he and the Muellers, who plant along the northern boundary, were the only ones who used that area. Pyle explained that he planted along the same crop line in the northwest field from 1995 to 2013, believing he owned that land. He established the line by projecting a fence line south of the creek across the field. He also introduced aerial photographs showing the crop line in 2010, 2012, and 2014.

Gall Jr. and the Muellers stated they used the northern boundary to plant and cross Gall land, as would hunters and anglers. The Muellers, who have farmed the Gall property for at least 20 years, explained that they would try to plant up to the fence-post boundary, though whoever planted first would establish the crop line. But the crop line

3

did not shift much year-to-year. And according to Jim Mueller, the fence Gall Jr. installed is 20 or 25 feet east of the usual crop line.

The district court found that the Pyles acquired the land up to the 2015 crop line by adverse possession and that a prescriptive easement existed across the north 60 feet of the Gall property to access that field. The court explained the Pyles had continuously and exclusively farmed the field to the crop line for over 15 years. And the court found the Pyles had similarly crossed the Galls' land continuously until 2015, had never asked permission, and were the only ones who did so to access the field. Based on these conclusions, the court did not address the easement-by-necessity argument.

## DISCUSSION

On appeal, the Galls challenge the district court's adverse possession and prescriptive easement findings. They assert the Pyles failed to prove that they exclusively possessed the land up to the crop line. And regarding the easement, the Galls argue the Pyles did not exclusively or adversely cross the Galls' land to reach the field. Upon review, we find the evidence supports the adverse possession finding but fails to establish a prescriptive easement. But because the district court never determined whether an easement by necessity exists, we remand the case for resolution of that question.

Adverse possession and prescriptive easements are related concepts that create different property interests. A prescriptive easement creates a right to use another's land, while adverse possession results in the transfer of title. *Allingham v. Nelson*, 6 Kan. App. 2d 294, 298, 627 P.2d 1179 (1981). But courts apply the same test to both principles. See *Fiest v. Steere*, 175 Kan. 1, 5, 259 P.2d 140 (1953) (prescriptive easements arise in substantially the same manner as adverse possession); *Brownback v. Doe*, 44 Kan. App. 2d 938, Syl. ¶ 1, 241 P.3d 1023 (2010) (courts look to the adverse possession statute when analyzing prescriptive easements).

4

To establish adverse possession or a prescriptive easement, a claimant must prove "open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503. Because courts presume the landowner retains legal title and the exclusive right to use the land, the claimant bears the burden of proving these elements by clear and convincing evidence. *Koch v. Packard*, 48 Kan. App. 2d 281, Syl. ¶ 2, 294 P.3d 338 (2012), *rev. denied* 298 Kan. 1203 (2013). This requires evidence that the truth of the asserted facts is highly probable. *Ruhland v. Elliott*, 302 Kan. 405, Syl. ¶ 3, 353 P.3d 1124 (2015).

Whether title has transferred or an easement exists involves factual questions. 302 Kan. 405, Syl. ¶ 1; *Koch*, 48 Kan. App. 2d 281, Syl. ¶ 3. Appellate courts review the underlying facts in a light most favorable to the prevailing party without reweighing the evidence or making credibility assessments. 48 Kan. App. 2d 281, Syl. ¶ 3.

1. *Sufficient evidence supports district court's conclusion that Pyles adversely possessed the field up to the crop line.*

The Galls contend the district court erred by concluding the Pyles exclusively farmed up to the crop line and by using the 2015 crop line as the boundary. Viewed in the light most favorable to the Pyles, the evidence supports the court's adverse-possession finding.

To establish exclusiveness, possession of the land must be "exclusive to the extent the nature of the use will permit." 48 Kan. App. 2d 281, Syl. ¶ 1. This requires consideration of the land's primary use and the frequency that others use the land. Depending on the facts of the case, another's use may not undermine exclusive possession. See *Stark v. Stanhope*, 206 Kan. 428, 436-37, 480 P.2d 72 (1971) (in adverse possession case, where appellants lived on tract of land crossed by public road, public's

5

casual or infrequent use of road which differed from appellant's use of land did not defeat exclusivity).

The Galls argue the Pyles could not have exclusively possessed the land up to the crop line. In doing so, they point to evidence at trial that they claim supports their position and discount other evidence in the record. For example, the Galls note the crop line shifted each year, depending on who planted first, and hunters and anglers would cross the field. The Galls also attempt to discredit Dennis Pyle's testimony, asserting that his reasoning for planting up to the crop line—because he believed it was the boundary line and that doing so was the customary practice—is inconsistent. And they assert that though aerial photographs showed the crop line in 2010, 2012, and 2014, there is no evidence that the crop line remained stable in previous years.

These arguments do not undermine the district court's conclusion, however. Hunting and fishing does not negate exclusivity because there is no question that the field is primarily used for agriculture; any recreational use is unrelated to that purpose and is casual and infrequent compared to the Pyles' farming. Accord *Stanhope*, 206 Kan. at 436-37 (infrequent public use does not defeat a claim of exclusive possession). And the Galls' remaining arguments would require this court to reweigh the evidence, which is beyond the scope of appellate review. Though the Muellers—the Galls' tenants—stated the first to plant established the crop line, they also explained that line did not move significantly. Jim Mueller and Dennis Pyle recognized a traditional crop line existed. And Pyle explained he planted to that line in 2015.

Thus, the district court's finding that the Pyles exclusively possessed the land east of the 2015 crop line is supported by sufficient evidence in the record. The Galls have not shown that the district court erred when it found the Pyles adversely possessed the northwest field up to the crop line.

6

2.  *The district court erred when it found the Pyles had acquired a prescriptive easement because the evidence does not show the Pyles exclusively crossed the Galls' land.*

The Galls also challenge the district court's ruling that the Pyles had established a prescriptive easement (to access that northwest field) across the northern boundary of the Galls' land. The Galls argue that the Pyles' use of that route was not sufficiently adverse because the Galls' 2015 letter granted the Pyles permission to cross the land. And they assert that because the evidence showed that both the Pyles and the Muellers used the northern boundary to access the various fields, the Pyles' use was not exclusive.

At the evidentiary hearing, Dennis Pyle testified that he and the Muellers used the northern 60 feet of the Galls' property to access their respective crops. The Muellers described planting crops along that area. Gall asserts this use by the Muellers, along with other use for hunting and fishing, proves the Pyles did not exclusively use the land. The Pyles contend the use was sufficiently exclusive because they were the only ones to use the Galls' land *to cross to their field* and any recreational use by hunters and anglers was unrelated to the land's primary agricultural use.

As we have previously noted, recreational hunting and fishing does not negate exclusivity in this context. But the other evidence did not show that the Pyles exclusively used the northern boundary of the Galls' land. Pyle and the Muellers both used the northern boundary for agricultural purposes—Pyle used it to reach his field, and the Muellers planted the northern boundary and used it to cross the Galls' land. Though the Muellers did not use the land to access the Pyles' field, both used the route to reach their respective crops.

In *Koch*, this court found the plaintiff had not proven exclusive use when he testified that both he *and other people* routinely used a road that crossed the defendant's land. 48 Kan. App. 2d at 288-89. We explained that "[w]hen Kansas courts have considered the requirement of exclusivity in the adverse possession context, those courts

7

have determined the claimant's use of the property at issue must be to the exclusion of *all other persons*." 48 Kan. App. 2d at 288.

Here, the Muellers stated—and Pyle confirmed—that Pyle was not the only person to routinely cross the Galls' land for agricultural purposes. As such, the Pyles did not prove that they exclusively used the Galls' land. Because a prescriptive easement does not exist without exclusivity, we need not examine the Galls' argument concerning adversity. See *Ruhland*, 302 Kan. at 418.

The district court thus erred when it found the Pyles had established a prescriptive easement across the Galls' field. As we have noted, however, the Pyles also presented an alternative argument to the district court—claiming they had an implied easement by necessity to allow them to access their property. See, e.g., *Stroda v. Joice Holdings*, 288 Kan. 718, 727-29, 207 P.3d 223 (2009) (discussing necessity standard); *Horner v. Heersche*, 202 Kan. 250, 252-55, 447 P.2d 811 (1968); *Smith v. Harris*, 181 Kan. 237, 248-49, 311 P.2d 325 (1957) (discussing implied easements); see also K.S.A. 68-117 (providing a method for establishing an access easement). The district court did not address this question. We therefore remand the case to the district court to determine whether an implied easement by necessity exists under these facts.

Affirmed in part, reversed in part, and remanded with directions.