(766 P.2d 188)
No. 60,847

DAN S. SCHROEDER, *et al., Appellees,* v. JOHN URBAN, *et al., Appellants.*

Opinion filed December 22, 1988.

*James R. McEntire,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellant.

*Robert J. Lewis Jr.,* of Lewis, Lewis & Beims, of Atwood, for appellee.

Before BRAZIL, P.J., PAGE W. BENSON, District Judge Retired, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BRAZIL, J.: Defendants John Urban, Daniel Urban, Rocky Urban, and Marvin Urban appeal from the memorandum decision of the trial court finding that a road leading to plaintiff Dan Schroeder's home is a township road, that a 20-foot easement created in a prior court action is sufficiently wide to permit travel, and that the easement is not unduly hampered by a temporary fence across the path. We affirm.

The Urbans and Schroeders are adjoining landowners in Thomas County. This litigation was predicated on years of boundary disputes. A previous lawsuit resulted in the Urbans obtaining a 20-foot easement to allow them access to a 40-acre tract of land. The Urbans counterclaimed in the present suit, requesting that the easement be widened to 35 feet and that Schroeder be restrained from blocking the easement. The district judge made a finding of fact that the 20-foot easement was

sufficiently wide and that Schroeder may put a temporary fence across the easement as long as he provides the Urbans with a gate.

The Urbans also contended that Schroeder took some of their land and used it for a private road. Schroeder alleged that the road in question was a township road. The district court made a finding of fact that the road in question is a Rovohl Township road.

The Urbans are appealing from the findings of fact made by the district judge. On review, this court must determine whether the findings of fact are supported by substantial competent evidence. *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988). "Upon appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial judge." *Short v. Wise*, 239 Kan. 171, 178, 718 P.2d 604 (1986).

1. The driveway to Schroeder's farmhouse.

The trial judge found that the driveway to Schroeder's farmhouse is a Rovohl Township road. At trial, Bud Jones, a resident of Rovohl Township who worked on the township roads for 27 years and served on the township board for 24 years, testified that the road is on a half section line, was established between 1942 and 1944, and is a township road. Jones testified that the township maintained and graded the road and that the township had elevated the road three times. Jones testified that the previous adjoining landowners consented to the road. In addition to Jones' testimony, Schroeder testified that he has been familiar with the road since the 1950s and that the township had always elevated the road. Schroeder also testified that the Urbans had been notified by the township to remove a fence they built on the road.

In *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976), the court stated that a public road in Kansas may be established by purchase or condemnation, by prescription, or by dedication. In this case, there is no evidence that the road in question became public by purchase or dedication; therefore, if the road is public, it must have become public by prescription. A public road will be established by prescription if it is " 'used by the public with the actual or implied knowledge

of the landowner, adversely under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly' " for fifteen years. 219 Kan. at 502. The court in *Kratina* discussed the elements of adverse use by the public.

"It will be observed that an 'adverse' use is an essential element. Of this it has been said:

" 'Nowhere is the confusion as to the exact theory of prescription more evident than in the element of adverseness of use. If we are to follow the fiction of a lost grant, then the user must be with the approval of the owner of the fee. But if prescription is analogous to adverse possession, the use must be against the fee holder's wishes. The use must be such as to clearly indicate that it is claimed as a right and is not the effect of indulgence or anything short of a grant. It must be such an invasion of the rights of the owner that he could have maintained an action against the user.' (2 Thompson on Real Property, 1961 ed., § 341.)

". . . The idea of the lost grant is that the owner of the land would not knowingly acquiesce in its use by others claiming as a matter of right for such a long period if he or his predecessors had not expressly granted such a right. It is a fiction, it is said, in which even the courts do not believe. It is nevertheless so strong a fiction that the owner will not be heard to testify that he in fact never made such a grant.

"In this state we have never expressly recognized the 'lost grant' theory, nor have we rejected it." 219 Kan. at 502-03.

## After reviewing prior case law the court stated:

"In each of those cases, as in any prescription case, the question was what kind of public user was so clearly 'adverse' to the owner's rights as to start the prescriptive period running. In each it was held that only when the public officials took steps to improve or maintain the road was there evidence clearly establishing that the public looked on the road as a public way and used it as a matter of claimed right. The court has concluded that these cases represent a concept which should be universally applied.

"Mere use by the traveling public is ambiguous. If done with the owner's permission there can never be a public road, no matter how long the use is continued. *City of Osawatomie v. Slayman*, [185 Kan. 631, 347 P.2d 405 (1959)]; *State v. Horn*, [35 Kan. 717, 12 Pac. 148 (1886)]. It is clear the owner must have knowledge of the use in order to give rise to a prescriptive right. *City of Topeka v. Cowee*, [48 Kan. 345, 29 Pac. 560 (1892)]; *Shanks v. Robertson*, [101 Kan. 463, 168 Pac. 316 (1917)]. But whether the owner is 'permitting' the use, so it is not adverse, or is 'acquiescing' in it so that it *is* adverse, can never be established simply by showing that travelers are using a roadway. By the same token, mere use by the traveling public does not establish whether it collectively or any members of it claim to be using the road as a matter of right, so as to be adverse, or whether the public understands explicitly or implicitly that its use is with the owner's permission.

"On the other hand, where public officials take some positive action, either formally or informally, such as improving or maintaining the road, the intention of the public at least is unmistakable. County commissioners, township boards

and city governing bodies have no authority, and are not frequently known, to devote public money to private roads. When a road is worked by public authorities the owner is chargeable with the knowledge that they do so under a claim of right. If they do so for the prescriptive period we may then, if need be, either indulge in the fiction of a lost grant, or rely on the presumption of a prior legal proceeding alluded to in *City of Topeka v. Cowee*, [48 Kan. 345].

"Or, as we have sometimes said, we can find an 'implied dedication' or a 'dedication by estoppel.' That is to say, when an owner by his conduct has led the public to believe he has dedicated land to public use and the public has relied on that belief to its detriment, he will be estopped to deny the dedication. This was the basis of the holdings, based on public maintenance, in *Raymond v. Wichita*, 70 Kan. 523, 79 Pac. 323 [1905]; and *Kansas City v. Burke*, 92 Kan. 531, 141 Pac. 562 [1914]. In *Kasper v. Miller*, 159 Kan. 488, 156 P.2d 550 [1945], it was applied to a public park which had been improved by the city and used by the public for more than 15 years.

. . . .

"In any event, the court is satisfied that the rule adopted here is the more equitable one, and will resolve the difficulties inherent in attempting to determine the intent of a landowner and of the public on the basis of ambiguous acts alone." 219 Kan. at 504-06.

This court in *Biggs Feed and Grain, Inc. v. City of Waverly*, 3 Kan. App. 2d 423, 424, 596 P.2d 171 (1979), followed *Kratina* and found that a road was established by prescription when the City had expended public funds and labor on the street for 19 years. The City performed work which included grading, ditching, rocking, repairing, mowing, and snow removal.

In the case at hand, Bud Jones' testimony indicates that Rovohl Township has maintained, graded, and elevated the road in question since approximately 1944. This is sufficient evidence to infer that the road became public by prescription under *Kratina*. The trial court's finding that the road is public is supported by substantial competent evidence.

2. The easement.

The district court found that the Urbans were given a 20-foot easement in 1976 and that the easement was sufficiently wide to allow ingress and egress. The district court stated that Schroeder may continue to put a temporary fence across the easement to hold cattle as long as Schroeder provides a gate for the Urbans.

Schroeder testified that he drove trucks and tractors pulling implements, the widest of which is 12 feet, on the easement. He testified that, when he meets the Urbans on the easement, the parties can pass each other and stay on the road. He testified that he never needed to go outside of the 20-foot easement. Dan

Urban testified that the poor condition of the easement made passing difficult but that two people could pass each other on the easement if they did not crowd one another. He also testified that he had never gone off the easement. The testimony by Schroeder and Dan Urban provides substantial competent evidence to support the district court's finding that the easement was sufficiently wide.

Schroeder testified about the temporary fence with the wire gate across the easement. He said that he put up the fence and gate when he pastured land and that he pastured land approximately 3 out of 10 years for a period of 10 to 30 days. John Urban testified that he did not mind opening and shutting the gate but that he was afraid he would be liable if Schroeder's cattle escaped. The testimony of Schroeder and the Urbans provides substantial competent evidence to support the trial court's finding that the temporary fence did not unreasonably interfere with the Urbans' use of the easement.

Affirmed.