(15 P.3d 368)

No. 84,413

HARLAND G. STRAMEL and DARLINE K. STRAMEL, Husband and Wife, and TYLER G. STRAMEL, *Appellees*, v. BARBARA BISHOP, *Appellant*.

Opinion filed December 8, 2000.

*Stephen P. Weir*, of Hein and Weir, Chartered, of Topeka, for the appellant.

*Thomas C. Boone*, of Law Office of Thomas C. Boone, of Hays, for the appellees.

Before GREEN, P.J., PIERRON, J., and RAWLEY JUDD DENT II, District Judge, assigned.

PIERRON, J.: Barbara Bishop appeals the district court's finding that a road existed by prescriptive easement on her property.

Bishop and her nephew own the north one-half of Section Twenty-Two, Township Eleven, Range Thirty-Five in Logan County. Harland G. and Darline K. Stramel own the southwest quarter of Section Twenty-Two, Township Eleven, Range Thirty-Five. Raymond and Donald Schroeder own all of Section Twenty-One, Township Eleven, Range Thirty-Five, which borders Bishop and the Stramels on the west.

A roadway, variously described as a road or a two-track trail, runs north to south between Bishop's and the Stramel's properties and then turns east onto the Stramels' property. The Stramels used the road for access to their property. The road had also been used through the years to bus schoolchildren and for general public use. The Stramels claimed that on or about September 1, 1998, Bishop instructed an employee to plow up and destroy the road. They also claimed she put "No Trespassing" signs at the north and south ends of the road.

At about the same time, Bishop reported to authorities that someone had trespassed on her land near the road and destroyed some of her wheat. Sheriff Pat Parsons investigated and was informed by the secretary for the road department that the road was not an open road. The county commissioners informed Parsons that the road was open. Parsons informed the Stramels and Bishop that the matter was a civil one.

The Stramels filed a petition against Bishop, alleging they and their predecessors-in-title had acquired an easement appurtenant in the roadway due to open and notorious use of and a belief of ownership in the road for many years. The Stramels eventually filed a second amended petition adding as defendants the Schroeders and the Board of Logan County Commissioners (County). The County entered an appearance in writing but did not enter an appearance at trial. The County also filed an answer stating it had never formally opened the road but would maintain it as a minimum maintenance road if ordered to do so by the court. The amended petition contained the same allegation regarding the road as made in the original petition, attempting to establish an easement by prescription.

After a bench trial, the district court ruled the evidence was that the road had been a public roadway used by the public adverse to Bishop's interests for more than 15 years. The court ordered that the road be re-established to a width of 50 feet.

A public roadway may be established in Kansas by a prescriptive easement. *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976). The *Kratina* court discussed the elements of a prescriptive easement:

" 'To establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute. When these conditions are present a highway exists by prescription; otherwise not.' " 219 Kan. at 502 (quoting *Shanks v. Robertson,* 101 Kan. 463, 465, 168 Pac. 316 [1917]).

Kansas cases have indicated that courts use the adverse possession statute, K.S.A. 60-503, to determine if the elements of a prescriptive easement are present. *Brady Fluid Svc., Inc. v. Jordan,* 25 Kan. App. 2d 788, 794, 972 P.2d 787 (1998); *Allingham v. Nelson,* 6 Kan. App. 2d 294, 298, 627 P.2d 1179 (1981). That statute provides: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503. The court in *Brady Fluid* found no prescriptive easement existed because the plaintiffs did not have a belief of ownership and the use was not exclusive. 25 Kan. App. 2d at 794. In this case, the Stramels' theory at trial appears to be that general public use over the years has created a prescriptive easement, not that the Stramels believed they owned the property. They believed it belonged to the public. This differs from cases where an individual attempts to assert an ownership right. The elements approved in *Kratina* are more applicable to this case: The adverse use by the public with the actual or implied knowledge of the landowner, continuously and uninterrupted for 15 years. These elements must be shown by clear and convincing evidence. See 25 Kan. App. 2d at 794.

Bishop lays out facts in her brief apparently intended to show the road was not on her property, but rather on the Schroeders' property. She claims a survey taken shows the road to be on Schroeder's property. Bishop also elicited testimony from Harland Stramel at trial that according to distance estimates provided by Bishop, the entire road would have been on the Schroeders' property. However, Bishop did not call the surveyor as a witness to

explain his findings, and the trial judge did not mention in his ruling that he found the road to be completely on the Schroeders' property.

There was testimony supporting the finding that the road was at least partially on Bishop's property. Don Schroeder testified he always believed the middle of the road was the boundary line between his property and Bishop's. Bishop cross-examined Schroeder on why the county valuation for his property showed 640 acres, which he stated was one full section of land, with no road taken out. Schroeder stated he did not know why that was.

Harland testified about rods found in the middle of the road that seemed to line up with another road that was not in dispute.

The district court found that the Stramels had shown the road was used by the public adverse to the rights of the owners for more than 15 years. This would seem to imply the court felt the road was at least partially on Bishop's property. There is sufficient evidence in the record to support this implication.

Harland testified he used the road for access to his property and for transporting livestock and farm machinery. His children rode the school bus on that road. Howard Koons testified he drove a snow plow down the road and up to the Stramels' door on occasion. He assumed the road was a public road since everyone used it. Dewey Council rode a school bus on the road in the 1920's and 1930's and it was also used by the public for whatever purpose was needed. There is ample evidence in the record for the district court to conclude the public had used the road continuously for more than 15 years.

To establish a prescriptive easement, the use of the road must be adverse to the owner. Use of a road with the permission of the owner can never ripen into an easement. *Brady Fluid Svc.*, 25 Kan. App. 2d at 794. Bishop argues that since the Stramels' predecessor-in-title, Alois Stramel, signed a petition to have the road made a county road in 1943 and the petition was rejected, the Stramels knew the road did not belong to them and thus the only way the road could have continued to exist after 1943 was by permission. This argument is contradictory. Bishop testified at trial that the road was on the Schroeders' land, so she never objected to anyone

using it. She only began objecting when she felt they were going off the road and coming onto her property. She also denied plowing up the road in dispute, claiming Harland and the County tore it up. We note that if Bishop did not believe the road belonged to her, she could not grant permission to use it. If she would have objected had she known it was her property, the road was being used adversely.

In *Kratina*, the court pointed to maintenance done on a road as imputing knowledge to the owner the road was being used. 219 Kan. at 505. In this case, there was evidence the road was maintained by the county, at least on a periodic basis. The county elevated the road in the 1970's. Norman Boyd, the Logan County Road Supervisor, testified the road had been maintained by the township and the county since 1946. He also testified on cross-examination, however, that the County will sometimes maintain private roads when requested to do so, and when the road in dispute was maintained, it was usually maintained clear through the Stramels' property.

A former heavy equipment operator for the county testified that he also maintained the road, apparently in the 1980's. The road maintenance performed by the county in whatever fashion it was done provides more evidence to support the district court's finding of adverse use for a period of more than 15 years.

The district court did not err in applying the law of prescription. The evidence in the record certainly supports a finding of a prescriptive easement located at least partially on Bishop's property.

Bishop counter-sued for damage she claimed was done to her wheat. During a deposition, Harland stated that he drove on Bishop's property at some point, but at trial, he testified it was not until he was given permission to do so by the court and the sheriff. Based on the district court's findings regarding the prescriptive easement, there appears to be no trespass. The district court stated:

"I didn't see any evidence whatsoever that would lead this Court to believe there was any trespass. If there was any trespass, it would have been by whoever destroyed Mr. Schroeder's property and planted it to wheat, and I'm not going to go into that issue because it's not . . . material."

Based on the district court's findings regarding the prescriptive easement, there is sufficient evidence to support its ruling on this issue.

Bishop also includes as an issue in her brief whether the district court erred in failing to quiet title in her and her nephew's name to all of the northern one-half of Section 22-11-35. It is questionable whether Bishop briefed this issue. An issue not briefed is deemed abandoned. *Bergstrom v. Noah*, 266 Kan. 847, 873, 974 P.2d 531 (1999). Regardless of whether the issue was sufficiently briefed, the district court's rulings on the easement issue dispose of this issue.

Bishop also claims the district court should not have awarded damages. She is apparently referring to the order by the court that the cost of re-establishing the road to its previous condition should be assessed to her. In their petition, the Stramels prayed for damages based on the allegation that Bishop had destroyed the road and prevented others from using it. The court stated that Logan County would bear the cost of maintaining the road. Since it ordered Bishop to pay the costs of re-establishing the road, the court must have determined that she was the one who destroyed it. Though the court does not make that finding on the record, it is the only plausible explanation for the court's ruling, and there is sufficient evidence to support that ruling.

On October 9, 1997, the district court issued an ex parte temporary restraining order ordering Bishop not to interfere with the Stramels' use of the roadway. Bishop is apparently arguing it was error not to vacate this order because she was only farming her own property. In light of the court's rulings already discussed, this issue becomes moot.

The Stramels state they are reserving the right to request attorney fees pursuant to Supreme Court Rule 7.07(b) (1999 Kan. Ct. R. Annot. 50) based on the facts of this case and the history of Bishop in this court.

Supreme Court Rule 7.07(b) requires a request for attorney fees to be made by filing a motion accompanied by an affidavit specifying the nature and extent of services rendered, the time expended on the appeal, and the factors considered in determining the rea-

sonableness of the fee. The Stramels have not complied with this rule and therefore are not entitled to attorney fees. See *C.M. Showroom, Inc. v. Boes*, 23 Kan. App. 2d 647, 654, 933 P.2d 793 (1997) (request for attorney fees must comply with Supreme Court Rule 5.01 [1999 Kan. Ct. R. Annot. 30] and Supreme Court Rule 7.07[b]).

Affirmed.