(241 P.3d 1023)
No. 102,355

JOHN BROWNBACK, *Appellee*, v. JOHN/JANE DOE, TRUSTEE OF THE THOMAS M. GILKISON TRUST, Dated December 13, 1980; and RICHARD WILSON and MARY WILSON, *Appellants*, and THE BOARD OF COUNTY COMMISSIONERS OF LINN COUNTY, KANSAS, *Appellee*.

Opinion filed November 12, 2010.

*Michael W. Blanton,* of Leawood, and *Nathan C. Harbur,* of Nathan C. Harbur, Chartered, of Leawood, for appellants.

*Blake Hudson,* of Hudson & Mullies, L.L.C., of Fort Scott, for appellee John Brownback.

*Gary E. Thompson,* of Mound City, for appellee Board of Linn County Commissioners.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J: John/Jane Doe, Trustee of the Thomas M. Gilkison Trust (Trust), dated December 13, 1980, Richard Wilson, and Mary Wilson appeal the district court's finding that a public road existed by prescriptive easement on property owned by the Trust. We reverse.

In October 2006, John Brownback acquired 172 acres of land in Linn County, Kansas. Several months later, Brownback sold 142 acres of the northern portion of his land and retained the remaining 30 acres to the south. Brownback accessed his 30 acres (Brownback property) by utilizing a "road," approximately 28 feet wide and 285 feet long, bordered by parallel fences and located on the southeast portion of the Trust property.

The western edge of Brownback's property abuts the northeastern edge of the Trust property. The "road" dead ended on the north end of the Trust property with a gate on the east fence leading to the Brownback property. The fence on the west had a gate leading to the Trust property. The "road" connected to Gwynn Road, a county road, on its south end. The Trust acquired its property in 2001 from Thomas and Elizabeth Gilkison. Mary Gilkison Wilson was the trustee of the Trust and was appointed as its property manager.

On December 12, 2007, Brownback filed a petition to establish the "road" he used to access his property as either (1) a public or private easement by prescription or (2) an easement by necessity. After several pretrial hearings, Brownback voluntarily abandoned his claims for a private easement and an easement by necessity.

The district court held a 3-day bench trial in February 2009. Several individuals testified that they sporadically used the "road" with or without permission over a period of more than 20 years to

access the Brownback property to hunt, to cut timber and hay, and to "park."

Additionally, retired Linn County Highway Department employees testified they performed maintenance twice on the "road" in the mid to late 1980's. There was no evidence that the County did any other "road" maintenance before or after the 1980's. Department employees testified they were aware of instances when county employees repaired and regularly maintained other private roads and driveways.

At trial, Brownback and Richard Wilson, Mary Wilson's husband, admitted into evidence maps, pictures, and aerial photographs suggesting both the presence and absence of a public road on the Trust's property. Brownback relied on an 1886 map of Linn County, taken off the courthouse wall during trial, and an unofficial 1906 plat book to claim that the "road" was a public road from 1886 to 1906 and continues to be a public road to the present.

According to land surveyor James Schmitz, Brownback's map expert, the 1886 map depicted a public road running through the Trust property. However, Schmitz suggested there was some confusion about whether the 1886 map actually depicted a public road on the Trust property. The legend on the map showed this road by a single line, but the map used double lines for public roads. Schmitz testified that the 1886 map broke the "cardinal rule of surveying" by incorrectly portraying fractional government lots to the east of a section line and, therefore, could contain other errors.

Additionally, Schmitz testified that there is no evidence of any official road, either public or private, that existed after 1906 on the Trust's property. Nevertheless, Schmitz asserted the presence of two parallel rock walls that extended north from the "road" suggested the "road" was a public road at some time. Schmitz also noted the 1906 plat book indicated a "wagon road" entered the Trust property from the south; however, the plat book did not describe the function of a "wagon road."

Brownback had two aerial photographs from 1971 and 1956 admitted into evidence. Former Linn County Engineer Richard Long compared these photographs and determined that an individual must have performed some periodic maintenance on the "road"

due to the road's coloring, but he could not confirm whether the County or a private party performed the maintenance.

In contrast, Richard Wilson admitted official county maps from 1998, 1989, 1982, 1976, 1969, 1954, and 1936, which he obtained from the Kansas Department of Transportation (KDOT). All the KDOT maps indicated there was no public road on the Trust's property. Additionally, Larry Robinson, the Linn County traffic safety coordinator and zoning administrator, noted the "wagon roads" described in the unofficial 1906 plat book were likely roads constructed by the federal government to access government lots and were never considered public roads.

Richard Wilson testified there was a three-strand barbed wire gate across the south entrance of the "road" with a "No Trespassing" sign on or near the gate when the Trust acquired the property in 2001. Sometime between 2003 and 2006, however, vandals removed the gate. Wilson did not construct a new gate until 2008.

In its order filed on April 1, 2009, the district court found that Brownback had proved

"by clear, convincing and satisfactory evidence that the public thought this was a public road, they used it as a public road with the actual or implied knowledge of the landowner, adversely under claim or color of right and not merely by the owner's permission and said use was continuous and uninterrupted for at least fifteen (15) years."

The district court did not designate the specific 15-year continuous and uninterrupted prescriptive period. The district court found that (1) several witnesses testified they used the "road" without permission numerous times over the last 50 to 60 years; (2) the 1886 map, the 1906 plat book, and the rock walls indicated that the "road" was either a public road or a "wagon road"; (3) the 1886 map and the 1906 plat book showed that the Trust had actual or implied knowledge that the public used the "road"; and (4) it was the only available means of ingress and egress for the Brownback property. The district court concluded with this evidence that Brownback established continuous and uninterrupted use from 1886 to the present.

The district court, however, acknowledged that the County did not regularly maintain the "road," that the "road" was not depicted

as a public road on any official KDOT map, and that the landowners of the property paid taxes on the "road" as if it were private property since 1989. The Trust timely appeals.

The Trust contends the district court erred in determining Brownback had established a public easement by prescription. Kansas cases "use the adverse possession statute, K.S.A. 60-503, to determine if the elements of a prescriptive easement are present." *Stramel v. Bishop*, 28 Kan. App. 2d 262, 264, 15 P.3d 368 (2000), *rev. denied* 271 Kan. 1042 (2001). The existence of a prescriptive easement is a question of fact reviewed for substantial competent evidence of a clear and convincing quality. *Brady Fluid Svc., Inc. v. Jordan*, 25 Kan. App. 2d 788, 793-94, 972 P.2d 787 (1998).

"In a claim of title by adverse possession, every presumption is in favor of the holder of the legal title and against the claimant. The law will not allow the property of a person to be taken by another upon slight presumptions or probabilities. The facts relied upon to establish adverse possession cannot be presumed, and presumptions will not be indulged in to establish a claim of title." *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, Syl. ¶ 3, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008).

In *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976), the Kansas Supreme Court discussed the elements required to establish a public prescriptive easement:

" 'To establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute. When these conditions are present a highway exists by prescription; otherwise not.' [Citations omitted.]"

The *Kratina* court stated: "Mere use by the traveling public is not enough to establish . . . that the use is adverse . . . . There must in addition be some action, formal or informal, by the public authorities indicating their intention to treat the road as a public one." 219 Kan. 499, Syl. ¶ 3.

Here, the district court noted: "[T]he Plaintiff presented the two (2) maps . . . which *clearly* indicate the 'road' was a public road and therefore the use would be with the actual and implied knowl-

edge of the landowner, adverse and under claim or color of right." (Emphasis added.) Although it is undisputed that members of the public periodically used this "road" for decades, there is no evidence in the record on appeal how the "road" was used from 1886 to 1906 and whether the use was continuous, uninterrupted, or adverse to the landowner.

In *Kratina,* the court found that in designating a road as a public road by prescription, public maintenance is most significant. See 219 Kan. at 501, 504-05. Although the district court did not discuss this "road's" maintenance in its decision, it noted that Linn County employees only worked on the "road" on two separate occasions in the late 1980s. See 219 Kan. 499, Syl. ¶ 3.

In *Biggs Feed and Grain, Inc. v. City of Waverly,* 3 Kan. App. 2d 423, 424, 596 P.2d 171 (1979), this court applied *Kratina's* "public maintenance" requirement and determined the City of Waverly, Kansas, established a public easement by prescription by expending public funds and city labor to perform maintenance on a city street for 19 years. The court noted the City performed considerable maintenance on the road, including "grading, ditching, rocking, repairing, mowing," and removing snow. 3 Kan. App. 2d at 424. Likewise, in *Schroeder v. Urban,* 13 Kan. App. 2d 164, 167, 766 P.2d 188 (1988), *rev. denied* 244 Kan. 738 (1989), this court concluded that a township established a public easement by prescription by continually maintaining, grading, and elevating a road for more than 40 years.

In this case, the district court relied solely on *Stramel* to impute knowledge of public use to the landowner. See 28 Kan. App. 2d at 266. In *Stramel,* the Logan County Road Supervisor testified the County or the Township had maintained the road since 1946. The evidence in the record on appeal in the instant case is that over a period of more than 100 years, the County ditched and graded the "road" twice. This is not evidence of periodic county road maintenance on the "road" for a 15-year period. Linn County also argues that someone working on the "road" two times does not establish a pattern of maintaining the road.

*Kratina* mandates that in order to designate a public road by prescription, there must be "some action, formal or informal, by

the public authorities indicating their intention to treat the road as a public one." 219 Kan. 499, Syl. ¶ 3. There is no evidence in the record on appeal that Linn County ever formally dedicated, opened, or officially recognized this "road" as a part of the county road system.

The record on appeal does not support by clear and convincing evidence that a public easement by prescription was created on the Trust property.

Reversed.