NOT DESIGNATED FOR PUBLICATION

No. 115,870

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JON GRIMMETT,
*Appellant*,

v.

MICHAEL D. LUELLEN and JONETTE R. LUELLEN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed July 28, 2017.
Affirmed.

*Gary L. Conwell*, of Conwell Law, LLC, of Topeka, for appellant.

*Kurt S. Brack*, of Overland Park, for appellees.

Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.

*Per Curiam*: Landowner Jon Grimmett appeals the district court's decision
denying his petition against adjoining landowners Michael and Jonette Luellen (the
Luellens) in which Grimmett sought to establish implied and prescriptive easements for a
water meter and water lines over land owned by Luellens. Finding no error in the court's
ruling, we affirm.

1

Because this case is highly fact-sensitive, it will be necessary to set out those facts in some detail in our decision.

The Luellens own parcels of land located at 1432 and 1428 NW Eugene Street, Topeka, Kansas. Grimmett owns an adjoining parcel of land located at 1422 NW Eugene Street. The parcels are aligned in a linear fashion with 1422 being the southern parcel (1422 parcel), 1432 being the northern parcel (1432 parcel), and 1428 sitting between the two (1428 parcel). The Luellens operate an automotive repair business on the 1432 parcel, and the office for the business resides on the 1428 parcel in addition to a separate building used for storage. Grimmett runs a four-unit mobile home park on the 1422 parcel.

Grimmett filed this action to determine whether he possessed either an easement by prescription or easement by implication for a water meter, water lines, and an easement area located on the Luellens' 1428 parcel. The easement area runs within feet of the northern two trailers on the 1422 parcel to the back of a storage building on the 1428 parcel. The city water for Grimmett's units on the 1422 parcel comes from a water meter located on the Luellens' 1428 parcel. The water meter is located in the southwest corner of the 1428 parcel.

In 1991, Daniel and Katherine Doyle (the Doyles) owned both the 1422 and 1428 parcels as one parcel. The Doyles ran a nine-unit mobile home park on the combined parcels. On January 30, 1991, Katherine sent a letter to the City of Topeka requesting the mobile home park be decreased from nine units to four units. The five mobile homes from the 1428 parcel were removed and a mini-storage building was constructed. Shortly thereafter, on March 27, 1991, the Doyles split the two parcels, with Frank Grace purchasing the 1422 parcel and the Doyles retaining the 1428 parcel. Ownership of the

1428 parcel passed through several owners but was ultimately acquired by the Luellens on October 14, 2011. The 1422 parcel Grace purchased had the recently reduced four-unit mobile home park on it that exists to this day. Ownership of the 1422 parcel was transferred several times but was acquired by Grimmett on July 6, 2009.

At trial, Katherine testified that the mini-storage building on the 1428 parcel was a separate business from the mobile home park on the 1422 parcel. Katherine further testified that she and Daniel did not intend the 1428 parcel to benefit the 1422 parcel in any way, and they did not intend the residents of the 1422 parcel to use the 1428 parcel in any way. She stated the residents of the 1422 parcel did not use the 1428 parcel during her ownership. Katherine testified the City of Topeka deemed the area of the disputed easement to be a fire lane and parking was prohibited in the area. Further, because the area in question was a fire lane and also for appearance sake, Katherine stated that no residents of the 1422 parcel were allowed to use the area in question for storage of personal belongings.

When Grace purchased the mobile home park, the easement area was used as a place for lawn chairs, barbecuing, and parking. Grace was aware that the water meter was located on 1428 and not 1422. The water meter was billed to Grace and in his name. Grace stated that the easement area was "[u]sed for the tenants of the north mobile homes" but acknowledged the easement area was not owned by him. However, Grace also stated that he believed the 1422 parcel property line ran past the actual property line to the back of the storage building on the 1428 parcel, and he would have never purchased the parcel if he had known differently. One of the tenants in the mobile home park had a "collection of multiple items" located in between the north mobile homes and the storage building. This included a car, "[t]ons of bicycles, a toilet . . . made into a flower pot," and other items. The clutter was enough to catch the attention of the City of Topeka and garner a nuisance violation.

3

Other witnesses testified that the area of the proposed easement was used frequently by mobile home residents for parking cars, for outdoor events such as block parties and barbecuing, and for generally sitting outside and "enjoying the weather."

When Grimmett purchased the property in 2009, he toured the property with the previous owner. Grimmett admitted he was not sure where the property line was when he purchased the parcel, but he assumed it ran to the back of the storage building on the 1428 parcel. Grimmett stated that residents used the easement area to park and generally used the entirety of the property up to the storage building. The water meter on the 1428 parcel that supplied water to the 1422 parcel was listed in Grimmett's name. Grimmett stated he never would have purchased the 1422 parcel had he known the easement area was not part of the property.

Michael Luellen testified that when they purchased the 1428 parcel in 2011 he had walked around the property prior to purchase and that the condition "was like a jungle." He did not notice any automobiles parked in the easement area upon his initial inspection. Michael also did not notice the existence of a water meter upon his initial inspection. But during some construction the Luellens were having performed on the 1428 parcel, an excavator hit a live water line. Michael assumed the water line ran to a building on the 1428 parcel that had a water faucet. Michael was not sure about this, but he did note that when the water line was repaired, he capped it off, and Grimmett still had water to all of his trailers. It is unclear from the transcript whether one or two water lines were underneath the strip of land in question, but there is no indication that the water supply to Grimmett's property was ever interrupted.

Michael knew that the residents of the 1422 parcel used the easement area prior to his purchase. Following the purchase of the 1428 parcel, the Luellens decided to erect a fence narrowly inside the property line. The Luellens had a survey taken of the 1428 parcel in order to decipher the location of the property lines prior to the installation of the

4

fence. The survey revealed that the steps to the two mobile homes on the north side of the 1422 parcel were partially on the 1428 parcel. Additionally, an air conditioner unit was over the property line.

Michael spoke with Grimmett about these issues. Grimmett consented to Michael moving the steps from the mobile home that was unoccupied. At Michael's request, another mobile home tenant moved his steps and air conditioner out of the easement area. Michael subsequently installed the fence.

The fence was installed less than 2 feet from the northern two mobile homes. One of the mobile homes only had doors on the north side. This meant that following the installation of the fence, it was nearly impossible to get into the mobile home. There were no stairs to get up to the doors, and the doors would not open all of the way. Another tenant still had access to his mobile home because he had a door on the opposite side of the mobile home. Michael eventually did move the fence 2 feet back from its original location. Grimmett claimed he could not rent out the mobile home with north-only doors because a person could not get furniture in and he "wouldn't feel comfortable putting a tenant in there and . . . being liable for their safety."

This litigation was commenced when Grimmett's counsel received a letter stating water to the 1422 parcel was going to be turned off. On June 13, 2012, Grimmett filed a petition to determine his interest in property, claiming a prescriptive easement in both the easement area and the water line in case No. 12-C-664. That case was subsequently dismissed without prejudice on May 27, 2014. Grimmett initiated this current case when he filed a petition to determine interest in property and quiet title on November 14, 2014. Grimmett alleged both an easement by prescription and an easement by implication for both the water lines and the easement area. Grimmett included a claim of $11,625 for damages due to lost rent caused by the fence.

5

The Luellens counterclaimed for judgment for ejectment and quiet title. Further, the Luellens asserted several affirmative defenses including being bona fide purchasers, legal and/or factual impossibility, and "Grimmett's failure to mitigate his damages." A bench trial occurred on June 22 and 23, 2015. The district court issued its memorandum decision and order on December 17, 2015.

After an overview of the facts, the district court first addressed the easement by implication claim. Running through and applying the factors of an easement by implication, the court found no implied easement existed with regard to the water lines and water meter. Without evidence of what a new meter would cost, the district court found it was impossible to find the easement was necessary. With regard to the easement area, the district court found an implied easement also was not necessary. While the fence may have created an inconvenient situation, there was still access to both mobile homes. Further, the court found barbequing was not "a necessity necessary to obtain the requested easement."

The district court also found an easement by prescription was absent in both cases. First, the district court found exclusivity was lacking with regard to the water lines and meter and the easement area. Lastly, the evidence did "not clearly demonstrate a knowingly adverse claim or a claim under belief of ownership." With regard to a knowingly adverse claim, the district court found that no one involved in the case knew the actual location of the property line; "therefore, it is impossible the plaintiff could appropriate land of which he did not know the exact owner." With regard to "a claim under a belief of ownership," the district court found it was unreasonable to believe ownership existed simply because one parked on the property occasionally or barbequed on the property. Accordingly, Grimmett's claims were denied and the Luellens were granted ejectment and quiet title.

Grimmett filed a motion to alter and amend judgment on January 14, 2016. Of particular interest for this appeal, Grimmett stated in the motion: "The Plaintiff has never made a claim for a prescriptive easement for the water meter or the water lines running from the water meter." The Luellens filed their response to Grimmett's motion on February 15, 2016. On April 6, 2016, the district court issued an order denying the motion, and the order was filed on April 7, 2016. Grimmett timely filed a notice of appeal on May 3, 2016.

ANALYSIS

*Implied easement for water lines and water meter*

On appeal, Grimmett first complains that the district court erred in finding there was no easement by implication for the water lines and water meter on the 1428 parcel. He contends the district court improperly focused its analysis on Grimmett himself instead of the Doyles and Grace who were the parties when the unity of title was severed. Grimmett asserts the intent of the original parties to the conveyance of the 1422 parcel following it being split from the 1428 parcel was to create "an implied easement as to the pre-existing use of the water meter and water lines." Grimmett argues the necessity "was determined by Doyle and Grace through their intentions."

In response, the Luellens contend the district court's decision on this point should be left alone. They first assert Grimmett's claim that the district court focused its analysis on him instead of the parties to the severance of the unity of title is "demonstrably false." The Luellens claim the district court properly focused on the original parties and only mentioned Grimmett as the one claiming the implied easement. Although Grimmett cites numerous facts to ascertain the intent of the original parties, the Luellens believe the facts simply do not show the original parties intended the 1428 parcel "would provide a benefit to" the 1422 parcel. They argue that the court properly found the easement was not

7

necessary in light of the absence of evidence from Grimmett on the issue. With no evidence of what the installation of a water meter would cost, the Luellens contend the district court properly decided this issue by making "a negative factual finding."

Our standard of review in this case is straightforward. "When reviewing the district court's findings, this court must determine whether substantial competent evidence exists to support the court's findings and will not re-weigh conflicting evidence." *In re Estate of Haneberg*, 270 Kan. 365, 374, 14 P.3d 1088 (2000). This case presents a negative finding on the part of the district court. "A negative finding means the party with the burden of proof failed to meet that burden. [Citation omitted.] An appellate court will not disturb such a finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic circumstance such as bias, passion, or prejudice. [Citation omitted.]" 270 Kan. at 374.

Regarding creating an implied easement, our Supreme Court stated in *Smith v. Harris*, 181 Kan. 237, 247, 311 P.2d 325 (1957) (quoting Restatement of Law, Property, Servitudes, § 474, p. 2972):

> "'When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created . . . in favor of one who has or may have a possessory interest in one part as against one who has or may have a possessory interest in another part by implication from the circumstances under which the conveyance was made, alone.'"

The facts of this case seem to best support an implied easement from preexisting use. For such an easement, there must first "'be unity of title and a subsequent severance thereof.'" *Bushart v. West*, 215 Kan. 205, 209, 523 P.2d 391 (1974) (quoting 25 Am. Jur. 2d, Easements and Licenses § 29, p. 443).

Second, while the title is still unified,

8

"'an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law.'" 215 Kan. at 209 (quoting 25 Am. Jur. 2d, Easements and Licenses § 27, p. 440).

Finally, and a bit repetitively, the "'implications of easements necessarily involve an original unity of ownership of the parcels which later become the dominant and servient parcels.'" 215 Kan. at 209 (quoting 3 Powell on Real Property, § 411, p. 449). The court in *Bushart* found this recitation of the rule to be in accord with previous precedents in both *Smith* and *Van Sandt v. Royster*, 148 Kan. 495, 83 P.2d 698 (1938). *Bushart*, 215 Kan. at 209.

Applying the above rule to this case, Grimmett's easement by implication clearly fails. Admittedly, there is little doubt that there was a unity of title and a subsequent severance thereof and an original unity of ownership of the parcels. The Doyles split the two parcels with Grace purchasing the 1422 parcel and the Doyles retaining the 1428 parcel. But the second factor is where the problem lies. In this case, the water meter and lines are the servitude and were "in uses at the time of severance." See *Bushart*, 215 Kan. at 209 (quoting 25 Am. Jur. 2d, Easements and Licenses § 27, p. 440). Grace was aware that the water meter was located on 1428 and not 1422. The water meter was billed to Grace and it was in his name, so it was clearly in use. But as the district court found, it does not seem that Grimmett has proven that the water meter and lines are "necessary for the reasonable enjoyment of the other part." See 215 Kan. at 209.

Obviously, water is necessary to run a mobile home park. However, Grimmett failed to show a reason why he was prevented from installing his own water meter. The district court was clear in its opinion that this lack of proof by Grimmett was the basis for its decision on this issue. Notably, Grimmett barely mentions this in his brief, discussing it seemingly in passing, stating: "[T]he necessity for an implied easement by implication

9

was determined by [the] Doyle[s] and Grace through their intentions." Grimmett fails to present a viable reason why an implied easement would be necessary with regard to the water meter and line. Applying our standard of review, we believe Grimmett has failed to show "an arbitrary disregard of undisputed evidence or some extrinsic circumstance." See *In re Estate of Haneberg*, 270 Kan. at 374. Because of this, we find no error in the district court's determination that there was no easement by implication.

*Implied easement in regard to the area of the 1428 parcel immediately adjacent to the 1422 parcel*

Grimmett's second argument is that the district court erred by not finding the area between the mobile homes on the 1422 parcel and the back of the storage facilities on parcel 1428 were subject to an easement by implication. He contends that Grace and the Doyles' intention was for the easement area "to be used as it had been when it was owned by Doyle," *i.e.*, for parking, barbecuing, and neighborhood social gatherings. With regard to necessity, Grimmett contends that absent an easement, the Luellens could move the chain link fence back to its original location, thus preventing egress and ingress from the mobile home with a north side entrance. In summary, Grimmett asserts an implied easement was created to allow the 1422 parcel to use the 1428 parcel to allow stairs to be used for ingress and egress, to allow the north doors on both mobile homes to open, and to allow the air conditioning unit for one tenant to remain in its original location.

The Luellens contend there are six elements that must be satisfied "[t]o establish an implied easement." Those elements are: "(1) apparent use; (2) continuous use; (3) unity of title; (4) subsequent severance thereof; (5) use of one part of the property to benefit the other part; and (6) intention of the parties (as well as the reasonably foreseeable expectation of the party to the conveyance)." Looking to the citation provided for these six elements, it is unclear where the Luellens got all six. The Luellens additionally list eight factors for determining if an implied easement exists taken from

10

*Van Sandt*, 148 Kan. at 501. In sum, the Luellens maintain Grimmett attempted to present an argument contrary to the facts established at trial, simply failed to address a majority of the district court's factual findings, and presented no undisputed evidence to overcome the district court's negative finding.

The standard of review and law applicable to this issue is identical to the first issue:  whether substantial competent evidence exists to support the district court's findings without a reweighing of the evidence. *In re Estate of Haneberg*, 270 Kan. at 374.

As with the first issue, we review a negative finding by the district court, meaning the party with the burden of proof, Grimmett, failed to meet that burden. See 270 Kan. at 374. Just as before, our duty is clear:  "An appellate court will not disturb such a finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic circumstance such as bias, passion, or prejudice." 270 Kan. at 374.

Once again on this issue, there is little doubt that there was a unity of title and a subsequent severance thereof and an original unity of ownership of the parcels. The Doyles split the two parcels with Grace, purchasing the 1422 parcel and the Doyles retaining the 1428 parcel.

Grimmett, however, once again fails on the easement being necessary, an integral element. The district court found tenants could "get in and out of the mobile home but other arrangements may need to be made to replace large furniture items." The district court found this to be "an inconvenience and not a necessity." Grimmett does not contest this finding in his brief but instead claims that the fence could be moved in the future to the property line which would create a necessity. This is mere speculation and far from Grimmett presenting an arbitrary disregard of undisputed evidence or some extrinsic circumstance. Grimmett fails on this issue also.

11

*Prescriptive easement for the water meter and water lines*

For his third issue on appeal, Grimmett argues the district court erred by not finding he was entitled to a prescriptive easement on parcel 1428 for the water meter and water lines.

After presenting an overview of Kansas caselaw regarding prescriptive easements, Grimmett points out that Kansas courts have utilized K.S.A. 60-503, the adverse possession statute, in analyzing prescriptive easements. Grimmett contends the district court found the water meter and lines "had been used for a period in excess of fifteen (15) years and that possession was open and continuous," thus satisfying "two of the three factors of the second element of K.S.A. 60-503."

Addressing the exclusive possession of the water meter and lines, Grimmett first maintains that starting in 1974 the water meter originally served all nine of the original mobile homes when the two parcels were unified. Further, he contends evidence at trial showed that between 1991 and 2015 the water meter and water lines coming from the water meter served the mobile homes on the 1422 parcel, and the owner of the 1422 parcel paid the water bills. Further, Grimmett argues that Grace had "the water meter in his name" and stated the 1428 parcel was not provided water from the meter. Lastly, Grimmett points out that no testimony was presented that RVH, Inc., the owner of the 1428 parcel immediately prior to the Luellens, utilized water from the water meter. With this in mind, Grimmett claims the evidence showed the 1422 parcel was in exclusive possession of the water meter and lines.

The Luellens begin their argument by also giving an overview of the prescriptive easement caselaw in Kansas. They contend Grimmett simply did not exclusively possess the water lines or meter. They point out that Grimmett stated in his motion to alter and amend judgment "that he was not making a claim for a prescriptive easement for the

12

water meter and water lines." However, the Luellens go forward with an analysis of the issue anyway.

The Luellens first give an overview of the factual findings made by the district court on this issue. These include that the water meter was connected to both parcels, and a live water line was hit by the excavator during construction, with the ensuing discovery that the line ran to a building on the 1428 parcel that housed a water faucet. Additionally, the district court held that Grace knew or should have known that water ran to both parcels and the water meter was owned by "the City of Topeka, and not subject to adverse possession." The Luellens contend Grimmett failed "to submit clear and convincing evidence of exclusive use" and as such the district court correctly decided this issue.

We pause only to note that, once again, the abuse of discretion standard applies to the district court's findings. "The existence of a prescriptive easement is a question of fact reviewed for substantial competent evidence of a clear and convincing quality." *Brownback v. Doe*, 44 Kan. App. 2d 938, 942, 241 P.3d 1023 (2010). We also note that, as before, we are reviewing a negative finding on the part of the district court, representing a failure to meet a burden of proof.

"Kansas cases have indicated that courts use the adverse possession statute, K.S.A. 60-503, to determine if the elements of a prescriptive easement are present." *Stramel v. Bishop*, 28 Kan. App. 2d 262, 264, 15 P.3d 368 (2000). K.S.A. 60-503 provides:

> "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

13

Also important to our analysis is this language cited by the court in *Brownback*, 44 Kan. App. 2d at 942, which was a prescriptive easement case:

> "'In a claim of title by adverse possession, every presumption is in favor of the holder of the legal title and against the claimant. The law will not allow the property of a person to be taken by another upon slight presumption or probabilities. The facts relied upon to establish adverse possession cannot be presumed, and presumptions will not be indulged in to establish a claim of title.' *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, Syl. ¶ 3, 186 P.3d 829 (2008), *rev. denied* 286 Kan. 1176 (2008)."

We believe Grimmett's contention in his motion to alter and amend the judgment that he "never made a claim for a prescriptive easement for the water meter or the water lines running from the water meter" is fatal to his cause of action here. However, even if we disregard this clear concession, Grimmett still fails on this point due to a lack of exclusivity to the water meter.

As we have observed, during the Luellens' construction on the 1428 parcel, an excavator hit a live water line. The Luellens assumed the water line ran to a building on the 1428 parcel that had a water faucet. Michael was not sure about this but did note that when the water line was repaired, he capped it off, and Grimmett still had water to all his trailers. As we previously noted, the record is ambiguous as to whether there was more than one water line involved. But clearly there was a supply of water running from the meter to both the 1422 parcel and the 1428 parcel. Therefore, it is impossible to say that the 1422 parcel exclusively possessed the water meter, which is just what the district court decided. Grimmett has failed to present an arbitrary disregard of undisputed evidence or some extrinsic circumstance.

*Prescriptive easement in regard to the area of the 1428 parcel immediately adjacent to the 1422 parcel*

In his last issue on appeal, Grimmett contends that the district court erred in denying his request for a prescriptive easement on the strip of land between the mobile homes on his 1422 parcel and the back of the storage facilities on the Luellens' 1428 parcel because the easement area was used exclusively by the tenants of the 1422 parcel. Grimmett claims the evidence showed the easement area had been used since 1991 "for parking of cars, barbeques, children riding tricycles, get-togethers, storage and generally sit[ting] to enjoy the weather." Furthermore, the storage building on the 1428 parcel was not used for the 12 years prior to the Luellens' purchase of the parcel.

Additionally, Grimmett contends he produced evidence to clearly demonstrate a knowingly adverse claim. Grimmett maintains Grace "thought he purchased the easement area," Grimmett believed he owned the easement area, the 1422 parcel tenants utilized the easement area "without interruption, continuously, openly and exclusively" since May 1992, and the City of Topeka sent code violations to the owner of the 1428 parcel as a result of the 1422 parcel tenants' actions in the easement area. Furthermore, Grimmett argues that the 1428 parcel owner knew the 1422 parcel tenants were trespassing and testimony reflects the 1422 parcel tenants used the easement area in an "open, apparent, and visible" manner.

Finally, Grimmett contends he produced evidence to clearly demonstrate "a claim of belief of ownership." Grimmett cites the same reasons he did for a knowingly adverse claim for this argument.

In response, the Luellens first contend Grimmett did not exclusively possess the easement area. The Luellens maintain that while Grimmett did put forth evidence that the 1422 parcel tenants used the easement area, he failed to show exclusive use. Further, they

15

argue that the easement area being claimed by Grimmett is unclear. Grimmett claimed one dimension in his original claim and came up with a different dimension at trial. The Luellens assert the district court was correct in finding the easement area was unclear and not exclusively possessed by Grimmett.

The Luellens next contend that Grimmett neither established his claim was knowingly adverse or a claim under belief of ownership. They argue that because no one knew where the property line was located, it was impossible for Grimmett to prove the use was knowingly adverse. The Luellens claim that, without knowing where the property line was, it was not possible to show any possession was hostile or contrary to the rights of the owner of the 1428 parcel. Furthermore, without knowledge of the property line, they believe it was similarly not possible for Grimmett to have a reasonable belief in ownership.

Yet again, and without additional repetition of the legal citation, we note the abuse of discretion standard applies to the district court's findings on this issue. We also note that our review is once again of a negative finding by the court, reflecting its determination that Grimmett had not met his burden of proof.

The law for this issue is identical to that of the previous issue. In order to avoid undue repetition, we simply note that under our previous decisions in *Stramel* and *Brownback* we must utilize the adverse possession statute, K.S.A. 60-503, and apply every presumption of title in favor of the Luellens, the legal titleholders of the 1428 parcel.

Additionally, and in a holding which is particularly applicable to this issue, the Kansas Supreme Court in *Stark v. Stanhope*, 206 Kan. 428, 433, 480 P.2d 72 (1971), quoting from commentary in Vernon's Kansas Statutes Annotated, Code of Civil Procedure, p. 7, the court included the following excerpt concerning 60-503:

16

"'Belief of ownership as a substitute for "hostile" holding is not without limitation. In cases where there has been an admission or recognition of doubt or uncertainty as to the true boundary line the requisite "belief of ownership" does not exist under the statute. *Further, it must be recognized that in cases where possession has been "under a claim knowingly adverse" hostility remains an essential element.*'"

Grimmett fails on this issue as well. The district court found that Grimmett lacked exclusivity of the easement area. Grimmett certainly presented evidence that tenants of the 1422 parcel possessed the easement area at times. When Grace purchased the mobile home park, the easement area was used as a place for lawn chairs, barbecuing, and parking. Grimmett stated that residents used the easement area to park and generally used the entirety of the property up to the storage building.

However, as both the Luellens and the district court pointed out, Grimmett failed to present any evidence of exclusivity. The only evidence that comes close is Grimmett's claim that the 1428 parcel storage units had not been utilized for the 12 years prior to the Luellens' purchase. However a look at the provided citation for this evidence, which came from Michael's testimony, reveals he was only referring to the use of the building as a storage business. He did not say no one utilized the property at all.

Further, Grimmett's claim that tenants parked permanently in the easement area is also misstated. Looking to the portion of the transcript cited, it is clear that Grace did not say the cars were in the easement area permanently, but rather "every night when they [came] home from work and stuff like that." Although the quote addresses adverse possession, the court in *Brownback*, 44 Kan. App. 2d at 942, rejected any reliance upon "slight presumptions or probabilities" to establish a claim of title by adverse possession. Grimmett's contention that the easement area was exclusively used by the 1422 tenants seems substantially overstated. Since this court cannot presume exclusivity, we must conclude that the district court did not err in its findings.

17

We take further note the district court found that Grimmett also failed to establish "a claim knowingly adverse or under belief of ownership." See K.S.A. 60-503. Grimmett failed to present any "proof of any arbitrary disregard of undisputed evidence or some extrinsic circumstance" to refute the district court's negative finding regarding both a knowingly adverse claim and "a claim or belief of ownership." See *In re Estate of Haneberg*, 270 Kan. at 374. Grimmett's brief largely summarizes the evidence the district court used in making its decision without demonstrating the ruling to be erroneous. Any additional evidence Grimmett presents is far from rising to the level of an arbitrary disregard of undisputed evidence. Once again, on this final issue we find no error in the district court's ruling.

Affirmed.